CITY OF AURORA

*v.*

PETER PULFER.

1. HIGHWAYS — *municipal corporations* — *of the duty of a city to keep open a traveled way.* In a private action against a city, to recover for injuries alleged to have been received by the plaintiff, by reason of the erection of a fence across a road or traveled way, claimed by the plaintiff to be a street, which it was the duty of the city to keep free from such obstructions, it appeared the place where the accident occurred was remote from the business portion of the city, and although the road had been a traveled way for some years before the ground which it passed over was embraced within the city limits, it was very questionable whether it ever was a legal highway, and certainly had never been opened or recognized as such by the city authorities. The owner of the ground,

denying the existence of the way as a public highway, erected the fence in question : *Held*, that, although the public necessities required a highway at or near that locality, the mere fact that the right of the city to use the way as a street was brought in doubt by the evidence, would, of itself, vest the city with a discretion, for the exercise of which it could not be held answerable, when, if at all, it would proceed to open it.

2. A municipal corporation can not be held liable for every accident that may happen where the public convenience may require a street shall be opened. Such corporations are invested with a discretionary power, when, if at all, they will proceed to open new streets in distant parts of the city ; and they can not be held liable for simply failing to use this discretionary power ; and they have a discretion as to when they will make improvements on unfrequented streets, and they are not liable for every accident that may occur for the want of such repairs.

3. SAME — *liability of cities for injuries resulting from defective highway.* If a person receive an injury as the combined result of an accident and a defect in the street or sidewalk, and the accident would not have occurred but for such defect, and the danger could not have been foreseen or avoided by ordinary care and prudence, the corporation will be liable to the party injured.

4. But a corporation can not be held liable for every mere accident that may occur within its limits. So where a person in attempting, in the night time, to get over a fence which had been erected across a traveled way, slipped and received severe personal injuries, he being fully aware that the fence was there, and it not appearing the fence was at all dangerous in the manner of its construction, it was *held*, the corporation was not liable, the injury being attributable rather to a mere casualty than to the obstruction in the road.

APPEAL from the Circuit Court of Kane county ; the Hon. SILVANUS WILCOX, Judge, presiding.

This was an action brought by Pulfer against the city of Aurora, to recover for injuries to the plaintiff occasioned, as alleged, by the negligence of the defendant in permitting obstructions in a street of the city. A trial by jury resulted in a verdict for the plaintiff, upon which the court entered judgment, and the defendant appeals.

Mr. N. F. NICHOLS and Mr. EUGENE CANFIELD, for the appellant.

272 · CITY OF AURORA *v.* PULFER. [Sept. T.,

Opinion of the Court.

Mr. C. J. METZNER, for the appellee.

Mr. JUSTICE SCOTT delivered the opinion of the Court:

It is very questionable, from the evidence, whether there was in fact any legal highway at the place, where the appellee received the injuries complained of. It was within no addition to the city, and there is no pretense that a street had ever been opened at that point by the city authorities. If any legal highway did exist there, it was established by the town authorities, or by prescription, before the city was incorporated, in 1857. The existence of the highway was denied by Groch, who owned the land at the locality where the accident occurred, and it is very doubtful whether the city could have successfully maintained the highway and compelled the owner to keep it open.

The accident occurred in what was formerly called the "big woods," a timbered tract of country, in the vicinity of the city. At an earlier period a net work of roads crossed these lands in every conceivable direction. After the city was incorporated and these lands were included within its limits, they were gradually cleared up and improved. Fences were erected across these roads without any reference whatever to them. No one seemed to regard them as legal highways, or paid the least attention to them in making their improvements. Groch purchased the land where the accident occurred. It had for many years been used for the purposes of a brick-yard. Traveled roads, used for the convenience of the neighborhood, crossed it, and approached it from almost every direction wherever persons chose to travel. It is insisted by the appel lee that the town authorities, previous to the incorporation of the city, had established a road across these premises, and if the highway was not legally established, that the public had certainly acquired the right of way across the same by prescription and user, and because the limits of the city had been extended so as to include this road, that it thereby became a

street of the city, and that the city was bound to keep it open
for the use of the public and free from dangerous obstructions.

Soon after Groch purchased the land, he fenced it up and
placed gates on either side, at the points where it is alleged the
road entered and left his premises. This is the obstruction
complained of.

It can not be denied, in view of the evidence, that the right
of the city to a street across the premises of Groch, is question-
able, to say the least of it. The witnesses disagree as to the
line of the survey alleged to have been made, and also as to the
place of the traveled track. The owner of the land denied the
existence of any highway across his premises, and fenced across
the supposed street. Under these circumstances, was it the
duty of the city to assert this questionable right and to enter
upon a litigation, the result of which might be uncertain, or
to be liable for the consequences that might ensue? It seems
to us that this would be requiring too much of a municipal
corporation. It is apparent that the public necessities require
a highway at or near the place where it is alleged one now
exists. But a municipal corporation can not be held liable for
every accident that may happen where the public convenience
may require that a street should be opened. Such corporations
are invested with a discretionary power when, if at all, they
proceed to open new streets in distant parts of the city, and
they can not be held liable for simply failing to use this dis-
cretionary power. *The City of Joliet* v. *Verley,* 35 Ill. 58.

This doctrine was recognized in the case of *The City of Chi-
cago* v. *Martin,* 49 Ill. 241. It was *held,* in that case, that a
municipal corporation has a discretion as to when they will
make improvements on unfrequented streets, and they are not
liable for every accident that may occur for the want of such
repairs.

The place where the injury occurred, of which the appellee
complains, was distant from the main portion of the city. It
seems that there were no houses nearer the place of the acci-
dent than twenty rods. It was not the duty of the city to

18 — 56TH ILL.

move in the matter of opening this street unless its right to do so was reasonably certain. They were not bound to incur the expenses of uncertain and tedious litigation. It would certainly be extending the liability of municipal corporations to a very extraordinary extent to hold that they were liable for not asserting every uncertain right. If the right of the city was clear and unequivocal it would be the plain duty of the city to keep it open and free from obstruction for the use of the public, or answer in damages for the consequences.

We will not undertake in this case to determine, with accuracy, whether there was a street at the place where the accident occurred or not. That question can better be determined by a direct proceeding on the part of the city to open the street. It is sufficient, for the purposes of this case, that the right of the city to the use of the street at the locality in question is brought in doubt by the evidence. That fact alone would invest the city with a discretion when, if at all, they proceed to open it.

But if it be conceded that there was a street at the place where the accident occurred, and that it was the plain duty of the city to cause the obstruction to be removed, would the facts presented in this record entitle the appellee to a recovery? A brief history of the events attending the accident may be given.

It appears that the appellee had been to church in the morning, and in the afternoon he went to the beer garden, some distance from his home. It was on the afternoon of Sunday. He remained at the house of the proprietor of the garden until about nine o'clock P. M., and then started for his home, alone. The night was dark, and the region over which he had to pass was rough and hilly, and there was no well-traveled track for his use. It was rather a difficult undertaking for a man of his age, but he was perfectly familiar with the route and the difficulties that he would necessarily encounter. He had been drinking some beer in the afternoon, but was not unduly affected by it. When he reached the point where the fences of Groch obstruct

the alleged highway or street he tried to open the gate, but found it fastened.   He then moved to one side, and in attempting to get over the fence slipped and fell.   In the fall his leg was broken, and it was afterward amputated.   It is not alleged that the fence was insecure, or that it gave way, causing the injury.   The injury seems to have been the result of the merest accident.   The appellee, or any other person, might have crossed the fence a hundred times, and received no injury. The fence was not, in its character, a dangerous obstruction to any one passing on foot.   A person approaching the fence would be fully advised of the nature of the obstruction that he was about to encounter.   It is wholly unlike a defect in the sidewalk or in the street that could not be readily detected.   The fence was an ordinary board fence, the boards having been nailed on horizontally, and it is a matter of common observation that it is not dangerous to undertake to get over such a fence, even in the night-time, if it is of sufficient strength to bear the weight of the person.   It seems impossible that the appellee could have been injured in getting over the fence, if he had been in the exercise of due care and caution.   If the accident was the result of his own negligence and want of proper care, the law is well settled that he can not recover. He was fully advised, when he approached the fence, of the nature of the obstruction he was about to encounter, and that fact itself would impose upon him the necessity of exercising due care and caution in passing it.   The appellee was bound to exercise such a degree of care, and if for the want of it he sustained the injury, the law can afford no remedy.

There was nothing in the character of the obstruction itself that rendered it at all dangerous.   It was open and visible. The appellee did not come on it suddenly and unawares, for he well knew it was there, and when he approached it he deliberately attempted to cross over.   There was certainly no sort of danger in the undertaking if he exercised ordinary care and prudence.   If he was even reckless it is difficult to conceive how the accident could have been produced.   It must,

276 CITY OF AURORA *v.* PULFER. [Sept. T.,

Opinion of the Court.

therefore, be accredited to one of those accidents which no human wisdom can account for. The slightest misstep in the darkness of that night, in any part of the route over which he passed, might have produced the same result. It is not infrequent that the slightest obstruction in a street may be the cause of an accident. But it is not possible that a municipal corporation can be held liable for every accident that occurs within its corporate limits from the most trifling causes.

The obstructions or defects in the streets or sidewalks of a city, to make the corporation liable, must be of such a nature that they are in themselves dangerous, or such that a person, exercising ordinary prudence, can not avoid danger or injury in passing them; in general, such defects as can not be readily detected. It would be extending the liability quite too far to hold that a municipal corporation is liable for every mere accident that may occur within its limits. It would be a most disastrous rule to adopt.

If the injury is the combined result of an accident and a defect in the street or walk, and the accident would not have occurred but for such defect, and the danger could not have been foreseen or avoided by ordinary care and prudence, then such a corporation will be liable to the party injured. *The City of Joliet* v. *Verley*, 35 Ill. 58; *The City of Bloomington* v. *Bay*, 42 id. 503.

It was error in the court not to award a new trial, and the judgment must be reversed and the cause remanded.

*Judgment reversed.*