THE CITY OF GIBSON

*v.*

BELLE MURRAY.

*Opinion filed October 24, 1905.*

1. INSTRUCTIONS—*when error in an instruction will not reverse.* An instruction requiring a city to exercise reasonable care to keep its sidewalks in "good and safe condition" instead of in *reasonably* good and safe condition will not work reversal although technically erroneous in that respect, where, in view of the other language used in the instruction and in other instructions correctly stating the law, it is clear the error is harmless.

2. EVIDENCE—*when admitting ordinances of city in evidence is not reversible error.* In an action for injuries from a defective sidewalk it is not reversible error to admit in evidence ordinances of the defendant city making it the duty of certain officials to keep the streets and sidewalks in good condition, the purpose of the evidence being to show that complaints of the defective condition of the walk were made to the proper parties.

APPEAL from the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of Ford county; the Hon. R. W. HILSCHER, Judge, presiding.

This is a suit, brought by the appellee against the appellant city on November 21, 1903, in the circuit court of Ford county to recover damages for personal injuries, sustained by appellee through a fall on March 28, 1903, upon a sidewalk in said city. The trial below resulted in verdict and judgment in favor of appellee. An appeal was taken to the Appellate Court where the judgment has been affirmed.

The facts are substantially as follows: The walk in question was on the east side of Union street in said city, and on the north side of South Second street at the intersection of the two streets. Union street runs north and south, and South Second street, which crosses it, runs east and west. The walk was a section of sidewalk about sixteen feet long and four feet wide, with three stringers running lengthwise,

one at each side and one in the middle. It crossed a ditch, which ran east and west along the north side of South Second street. This ditch was five or six feet wide and from eighteen inches to two and a half feet deep from its bottom to the top of the walk. When the accident occurred several of the planks, which had lain crosswise upon the stringers, had become loosened therefrom, and lay lengthwise of the walk across the opening therein. The space, covered by these loose planks, was from three to four feet wide. On March 28, 1903, when the accident occurred, there were two boards lying lengthwise of the walk near the center of the hole under the walk, which was about three feet in length from north to south. These boards were from six to eight inches in width, and appeared to be about four feet long. Before March 28, 1903, the two boards in question were lying crosswise of the hole about the center of it, that is, across the stringers in the same direction as the other boards of the walk; but on March 28, 1903, when appellee came out of the west door of a house near the corner of Union and South Second streets, and crossed the sidewalk to catch up and walk with her husband, whom she saw on the opposite of the street, the two boards were lying lengthwise of the walk side by side near the center of the hole. She was walking south, and stepped on the west one of the two boards, which turned or flew up, and she fell astride the board with her feet in the ditch, but not touching the bottom. She fell forward to the right in a doubled-up position, her hands striking the walk on the south side of the hole. Her weight struck with full force upon the upturned edge of the board upon the right side of the abdomen in the pelvic region. The evidence tends to show that her injuries were serious. Two operations were performed upon her, in the first of which her womb was stretched, and in the second of which the abdomen was opened.

Cloud & Thompson, for appellant.

L. A. CRANSTON, and A. L. PHILLIPS, for appellee.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

In this case three instructions were given in behalf of appellee, and ten instructions were given in behalf of appellant. Four instructions, asked by the appellant, were refused, but no point is made in the argument of counsel as to the refusal of these instructions.

The evidence tends to show, and upon this point is not seriously contradicted, that the appellant city was guilty of negligence in allowing the sidewalk, at the place where the accident occurred, to remain defective and out of repair; and although there is some evidence to the effect that complaint in regard to its condition was made to some of the city authorities, and it was repaired by reason of such complaint, yet afterwards it again became out of repair, and remained so for a long time before the accident occurred. The proof tended to show that it was out of repair for some two years before March 28, 1903, when appellee was injured. Appellant's counsel, at the close of all the evidence and before the commencement of the argument, presented to the court, and to appellee's counsel, a written motion to submit to the jury the following instruction and interrogatory, and moved the court in writing to submit to the jury, said interrogatory to be answered by them; and to give to them the instruction, attached to the interrogatory; and, thereupon, the court gave such instruction, and its accompanying special interrogatory, which are as follows, to-wit: "The jury are instructed to answer the interrogatory hereunder written by the word 'Yes' or 'No,' as they shall find the fact from the evidence, and to sign the same and to return the same into court with their general verdict. Interrogatory—Could the plaintiff by the exercise of due and ordinary care, as defined in the instructions given you, have avoided the fall and in-

jury, mentioned in her declaration and in the evidence?" to which special interrogatory, submitted to them by the court, the jury answered "No."

*First*—The giving of the first instruction, given on behalf of appellee by the trial court, is assigned as error by the appellant. This instruction required the jury, among other things, in order to entitle the appellee to recover, to believe from the evidence "that the corporate authorities of the city of Gibson did not exercise all reasonable care and caution and supervision over the sidewalk, where the alleged injury in question is alleged to have occurred, to keep it in good and safe condition, and by that means allowed it to become defective and unsafe." This instruction is alleged to be erroneous, upon the ground that it required the city to exercise reasonable care over the sidewalk "to keep it in good and safe condition," instead of requiring the city to keep it in a "reasonably good and safe condition." The instruction required the city to exercise "reasonable care and caution," to keep the sidewalk in good and safe condition, but omitted the word "reasonably" before the words, "good and safe condition." In this respect the instruction was defective. It is undoubtedly the law that cities and villages are only required to keep the sidewalks in a reasonably safe condition. (*Town of Grayville* v. *Whitaker,* 85 Ill. 439; *City of Chicago* v. *Bixby,* 84 id. 82; *Village of Mansfield* v. *Moore,* 124 id. 133). It is to be observed, that, in this instruction, the words complained of are followed by this clause, "and by that means allowed it to become defective and unsafe." A finding of the jury in behalf of the plaintiff was conditioned upon their believing from the evidence that there was a failure to exercise reasonable care over the sidewalk to keep it in good and safe condition, and that, by that means, the sidewalk was allowed by the city to become defective and unsafe. If the sidewalk was allowed to become defective and unsafe, the city had failed to keep it even in a reasonably good and safe condition. In addition to this, the court

gave to the jury instruction numbered 9 at the request of the appellant, which is as follows:

"The law imposes upon cities the duty to exercise reasonable care to keep its streets and sidewalks in reasonably safe condition for use by persons traveling thereon; the city is not an insurer against injuries, received by reason of defects in its streets or sidewalks; if it maintains them in reasonably safe condition, it is not liable; and, in this case, if you believe from all the facts and circumstances, shown by the evidence, that the place, where the plaintiff claims to have been injured, was in such condition for travel thereon, or thereover, that a person, while in the exercise of ordinary care for his own safety, would have passed safely over, then the defendant is not liable in this case."

This instruction stated the law correctly, and therein stated the requirement of the city to be that of maintaining the sidewalk in a reasonably safe condition, and not in an absolutely good and safe condition. The defect in the first instruction, given for appellee, was cured by the ninth instruction, given for appellant, and other instructions to the same effect. It cannot be said, as is claimed by the appellant, that the ninth instruction, given for appellant, is inconsistent with the first instruction given for appellee, and that, therefore, the latter is not cured by the former. The use of the words, "keep it in good and safe condition," did not authorize the jury to find, that the sidewalk must be kept in a perfectly good and safe condition any more than that it should be kept in a reasonably good and safe condition. In other words, where the words "good and safe condition" are used, as here, without qualifying words, the jury are as much authorized to construe them to mean "reasonably good and safe condition," as to regard them as indicating a higher and more perfect condition. Such was the construction given to a similar instruction in *Village of Mansfield* v. *Moore,* *supra.* While, therefore, the first instruction, given for the appellee, was technically defective in the respect thus indi-

cated, such defect is not sufficient to authorize a reversal of the judgment in view of other words used in the instruction, and in view of the correct declaration of the law upon this subject, given in other instructions read to the jury.

*Second*—Appellant complains that the trial court erred in giving the third instruction, given for appellee. That instruction told the jury that if they believed "from the preponderance of the evidence, that the plaintiff was injured by reason of the defendant negligently failing to keep its sidewalk in reasonably safe condition, or negligently allowing the same to remain in an unsafe condition, as charged in the declaration, and without fault on her part; and that she has sustained damages; then the jury have a right to find for her such an amount of damages as the jury believe from the evidence will compensate her for the personal injury so received, and her expenses necessarily incurred in respect thereto, if any such expense has been proved; and also for the pain and suffering undergone by her, if any is proved by the evidence." The objection to the instruction is to the last clause thereof, to-wit, "and also for the pain and suffering undergone by her," etc. It is said that the jury were thus authorized to find for the plaintiff for pain and suffering undergone by the appellee, which may not have been caused by the injury in question, but which may have resulted from some other cause. But the instruction is not capable of such construction. The damages, which the instruction authorized the jury to give, are such damages as "will compensate her for the personal injury so received," the words, "so received," referring back to the injury suffered by her by reason of the defendant negligently failing to keep its sidewalk in reasonably safe condition, etc. The instruction also authorized the jury to give damages for "her expenses necessarily incurred in respect thereto," the words, "in respect thereto," also referring back to the same injury, caused by the failure to keep the sidewalk in a reasonably safe condition. The words immediately following could not have been

construed by the jury to refer to any other pain and suffering than that which she underwent on account of this particular injury. The instruction is not justly subject to the criticism made upon it.

*Third*—It is said that the court erred in admitting in evidence two ordinances of the city of Gibson, introduced by the appellee at the beginning of the trial. One of these ordinances was passed by the city council on May 14, 1901, and provided that the city marshal should be *ex officio* superintendent of streets, and should have general supervision of all streets, alleys and sidewalks under the direction of the committee on streets and alleys, and should see that the same were kept in good safe condition of repair. The second ordinance was passed on May 14, 1902, and provided that the superintendent of streets should have general supervision of the streets, alleys and sidewalks under the direction of the committee on streets and alleys, and should see that the same were kept in good safe condition of repair. The second ordinance repealed the first.

The object of introducing these ordinances was, not to show that it was the duty of the city to keep the sidewalks in a good and safe condition of repair, instead of a reasonably good and safe condition of repair, but their introduction was for the purpose of showing whose duty it was to supervise and look after the sidewalks of the city. The proof tended to show that, in June, 1901, complaint was made to the superintendent of streets about the condition of this sidewalk, and that, in response to this complaint, a workman at that time nailed on a couple of boards. At that time the city marshal and the superintendent of streets were the same person, the former being *ex officio* superintendent of streets. The ordinance tended to show that, in making complaint to the city marshal, complaint was made to the proper person, inasmuch as the city marshal was the superintendent of streets. It is true that, at the time of the trial, the ordinance of 1901 had been repealed. But the complaint was made and

the repairs also were made upon the sidewalk in June, 1901, and while the first ordinance, subsequently repealed, was in force. The proof tends to show that the repairs were made in June, 1901, although one of the witnesses says that the complaint was made in June, 1902. But Swan Poff, to whom the complaint was made, says that he was superintendent of streets two years, in 1900 and 1901. The proof also tends to show that the sidewalk only remained in repair, after it was fixed in pursuance of the complaint made, for about two months. Other portions of the evidence tended to show that it was out of repair for two years prior to the injury in question, which occurred on March 28, 1903.

The introduction of the ordinances may have been unnecessary and immaterial, because the duty to keep its sidewalks in a reasonably safe state of repair is imposed upon cities and villages by the law, and independently of their assumption of that duty through ordinances. But we cannot see how the appellant was materially injured by their introduction, as they merely related to the duty of the city, and the duty of a particular official of the city in reference to the matter in controversy, and the evidence was undisputed that the sidewalk was dangerously out of repair. In *City of Champaign* v. *Patterson,* 50 Ill. 61, which was an action on the case against the city of Champaign to recover damages for an injury received by the plaintiff by reason of a defective sidewalk, an ordinance was introduced in evidence in relation to the city officers of that city, and objection was made to its admission; it prescribed the duties of the city supervisor as to streets and alleys, and authorized him to make all necessary repairs thereof, and required him to examine into the condition of the streets and alleys, etc., and report the same to the city council, and recommend such repairs as he deemed necessary; and, in that case, this court, speaking through Mr. Chief Justice BREESE, said: "The objection to the introduction of this portion of the ordinance was, that it proved nothing, and tended to mislead the jury.

We cannot see it in that light. It was proper evidence to show that the city had taken under their cognizance and control these structures, and, if the defects complained of could be remedied by the outlay of $25.00, which was a matter of proof, then the failure to expend this money in making the repairs would constitute neglect by this officer of the city."

*Fourth*—The evidence shows that the second operation performed upon the appellee was so performed after the beginning of the present suit; and it is claimed that this evidence was improperly received, because there was no allegation in the declaration, under which it was admissible. In other words, it is insisted by appellant that there was no direct averment of permanent injury to appellee in the declaration. The declaration alleged that appellee was obliged to pay out money for board, lodging, nursing, care, house help, and other necessary expenses, "and now continues to lay out divers sums of money endeavoring to be healed thereof." This was substantially an allegation of the continuance of the effect of the injury after the beginning of the suit. The court, however, limited appellee, in its instructions and in the introduction of evidence in the matter of actual expenses on account of the injury, to the commencement of the suit, and, in the matter of pain and suffering, to the time of the trial.

*Fifth*—Complaint is also made by appellant of improper remarks, made by counsel for appellee in his closing argument to the jury. The remark complained of was improper, but the appellant's counsel objected to it, and the court then stated to the jury and made a ruling that the remark was improper, and directed the jury to disregard it. We concur with the Appellate Court in the following statement, made by them in their opinion deciding the present case upon this subject: "We do not think that the amount of the verdict indicated that the jury were in any degree influenced by the remark in arriving at the verdict. They seem to have followed the direction of the court, and disregarded it."

We have thus noticed all of the objections, which have been called to our attention in the argument of counsel for appellant, and do not find that any of them are sufficiently well taken to justify us in reversing the judgments of the lower courts, which settle all the facts of the case against appellant.

Accordingly, the judgment of the Appellate Court is affirmed.

*Judgment affirmed.*