Benjamin Joseph Bleiman, Appellee, v. City of Chicago, Appellant.

Gen. No. 41,881.

Heard in the second division of this court for the first district at the October term, 1941. Opinion filed May 14, 1942.

BARNET HODES, Corporation Counsel, for appellant; JAMES A. VELDE, ADAM E. PATTERSON and ARTHUR A. MANNING, Assistant Corporation Counsel, of counsel.

MICHAEL SIEMANSKI, of Chicago, for appellee; C. R. WACHOWSKI and M. C. ZACHARIAS, both of Chicago, of counsel.

MR. JUSTICE FRIEND delivered the opinion of the court.

Plaintiff sued the City of Chicago to recover damages for injuries resulting from a fall on a driveway along Ogden avenue, leading from the street over the sidewalk into an adjacent garage. Judgment was entered on a verdict of the jury for $2,000, from which the city appeals.

There is substantially no dispute as to the salient facts. The accident occurred September 20, 1939. Plaintiff was then employed as service and sales manager for an automobile concern. When only two years old he had been struck on the left knee with a rake, which subsequently caused the knee to become rigid. Later, in 1937, he slipped on a stairway and fractured his left leg above the knee. Leaving the hospital after the second injury, he walked with the aid of crutches and a caliper, which were subsequently discarded.

About three o'clock on the afternoon of the accident, while shopping for an automobile fender, plaintiff parked his car in front of 3452 Ogden avenue, Chicago, where a garage and repair shop was operated under the name "Fred and John." There was a driveway from the large door of the shop to the street. At the street there were two steel plates resting on the curb and the pavement, where they were fastened. These plates had been installed in 1931 with the approval of the city authorities.

As the result of the injuries sustained in the two prior accidents, plaintiff was handicapped in walking by a stiff left leg which he was unable to bend at the knee. The day in question was clear; there was no ice, snow or water on the ground, no grease or oil on the sidewalk, and no holes or defects on the surface of the driveway from the curb to the garage. The plates extending over the curb and connecting the driveway with the street projected one-half inch above the curb and driveway. This is conceded in plaintiff's brief and was admitted by his counsel on oral argument. As plaintiff walked from his car over the plates to the sidewalk, he did not notice this projection because, as he says, it was not visible from the street side of the driveway. When he returned from the garage a few minutes later, he was looking straight ahead and did not notice the difference in level caused by the plate before he tripped on it. The heel of his left shoe caught

the plate and he slipped down off the plate, which had a slight curve from usage, into the street, a drop of about 4 inches, sustaining a fracture to his left femur.

Whether plaintiff was in the exercise of due care for his own safety is a question on which, under the evidence, the verdict is conclusive. The controverted issue is whether the driveway, at the place where plaintiff fell, was reasonably safe as a matter of law. Under the well-settled rule in this State, a city can be found guilty of negligence only when the defect in a sidewalk is such that a reasonably prudent man should anticipate some danger to persons walking upon it. This rule was enunciated in the early case of *City of Aurora v. Pulfer*, 56 Ill. 270, wherein the court held that "The obstructions or defects in the streets or sidewalks of a city, to make the corporation liable, must be of such a nature that they are in themselves dangerous, or such that a person, exercising ordinary prudence, can not avoid danger or injury in passing them; . . . ." Later, in *City of Chicago v. Norton*, 116 Ill. App. 570, the Appellate Court had occasion to review a judgment in favor of plaintiff for $5,000 for damages which she sustained by a fall upon a sidewalk on Randolph street in the business district of Chicago. One of two adjoining flagstones in the sidewalk was approximately 2½ to 3 inches lower than the other, causing plaintiff's fall and injury. The sole question there presented was whether the sidewalk at the place where plaintiff fell was reasonably safe. In discussing this question the Appellate Court cited *City of Chicago v. Bixby*, 84 Ill. 82. In that case one section of the sidewalk was 12 inches lower than the adjoining section. A step was placed at the intersection of these differences in level. Plaintiff, in passing from the higher section to the lower, fell and was injured. In reversing the judgment the court said that "The city was bound only to the exercise of reasonable prudence and diligence in making this step. It is not required to

foresee and provide against every possible danger or accident that may occur. It is not an insurer against accidents, but is only required to keep its streets and sidewalks in a reasonably safe condition for the accommodation of travelers and pedestrians, and we are of opinion that the city has not failed in its duty in this instance. We think the evidence shows that the sidewalk was reasonably safe, and, if so, the city should not be held liable.'' Another decision relied on by the Appellate Court in the *Norton* case is *Beltz v. City of Yonkers*, 148 N. Y. 67, 42 N. E. 401, which is frequently cited by the courts of this State. In that case plaintiff fell and broke her leg while walking along Broadway, one of the principal streets in the city. The sole question involved was whether the evidence was of such a character as to warrant a finding by the jury of negligence on the part of defendant. There was little, if any, conflict in the evidence. The sidewalk upon which plaintiff fell was 8 feet in width and constructed of stone flagging. The accident occurred at the joint where two of the flags were united. This left an uncovered depression in the center of the walk of the same depth as the thickness of the flags, which was about 2½ inches, and covering a surface area of about 2 feet in length by 7½ inches in width. Plaintiff, while walking along this sidewalk, holding an umbrella over her head, stepped into the depression and fell, incurring the injury for which she sued. In discussing whether this evidence warranted a finding by the jury of negligence on the part of defendant, the court made the following observations: ''With the greatest vigilance and the utmost foresight there will still be accidents for which no one, in any legal sense, is to blame. In many such cases, however, when an accident does happen the human mind can see and suggest many ways by which it could have been avoided. . . . Of course a city cannot be required to keep streets in such condition as to insure the safety of travelers

under all circumstances. The measure of its duty in this respect is reasonable care and it is liable only for neglect to perform this duty. There are very few, if any, streets or highways that are or can be kept so absolutely safe and perfect as to preclude the possibility of accidents, and whether in any case the municipality has done its duty must be determined by the situation and what men knew about it before and not after an accident. When the defect is of such a character that reasonable and prudent men may reasonably differ as to whether an accident could or should have been reasonably anticipated from its existence or not, then the case is generally one for the jury; *but when, as in this case, the defect is so slight that no careful or prudent man would reasonably anticipate any danger from its existence but, still, an accident happens which could have been guarded against by the exercise of extraordinary care and foresight, the question of the defendant's responsibility is one of law. . . .* If the existence of such a defect is to be deemed evidence of negligence on the part of a city, then there is scarcely any street in any city that is reasonably safe within the rule, and when accidents occur the municipality must be treated, practically, as an insurer against accidents in its streets. The law does not prescribe a measure of duty so impossible of fulfillment or a rule of liability so unjust and severe. It imposes upon municipal corporations the duty of guarding against such dangers as can or ought to be anticipated or foreseen in the exercise of reasonable prudence and care. *But when an accident happens by reason of some slight defect from which danger was not reasonably to be anticipated, and which, according to common experience, was not likely to happen, it is not chargeable with negligence."* (Italics ours.)

We have quoted at length from the foregoing decision because the rule enunciated therein has been followed by the courts of this State. In *City of*

*Chicago v. Norton,* the Appellate Court, after citing *Beltz v. City of Yonkers,* said that "It is a matter of common knowledge that such differences in level may be found in almost every sidewalk in Chicago and a person walking along a sidewalk will step from a plank or stone three inches above the plank or stone upon which he steps without observing the difference in level. From such a difference in level, danger is not in common experience to be anticipated . . . ," and concluded by holding that the city can be found guilty of negligence only when the defect in the sidewalk is such that a reasonably prudent man should anticipate some danger to persons walking thereon.

In *White v. City of Belleville,* 284 Ill. App. 322, the court, relying upon *Beltz v. City of Yonkers,* held that a sidewalk depression from 16 to 19 inches in length and from 2½ to 3¼ inches in depth, separated from the remainder of the walk by a crevice one-fourth inch in width, did not render a municipality guilty of negligence as a matter of law, and reversed the cause without remanding it for a new trial. In the course of its opinion, the court, citing *City of Chicago v. Bixby, City of Chicago v. Norton, Powers v. City of East St. Louis,* 161 Ill. App. 163, and various other decisions in addition to the *Beltz* case, held it to be the settled law of this State "that a city is not an insurer against accidents; that it is not required to foresee and provide against every possible danger or accident that may occur but is only required to keep its streets and sidewalks in a reasonably safe condition for the accommodation of the public who use them."

While it is true that the Supreme Court of this State, in *White v. City of Belleville,* 364 Ill. 577, reversed the Appellate Court because it had not remanded the cause for another trial, the reversal was predicated on the fact that the evidence as to the cause of the injury was conflicting since it showed, not a minor defect,* as assumed by the Appellate Court,

but a crevice wider than one-fourth inch and a hole from 2 to 3¼ inches in depth, into which plaintiff testified that she had stepped and was thrown forward upon the street. The Supreme Court did not, however, overrule the well-established legal principle enunciated by the Appellate Court in *White v. City of Belleville* and other Illinois decisions.

In *Powers v. City of East St. Louis, supra,* plaintiff, while walking on a stone sidewalk, fell and broke her arm. Her suit was predicated on the charge that the city had constructed and maintained the walk in a dangerous and unsafe condition. There was some slight disparity in the evidence as to the difference in level on the walk where plaintiff fell; one witness had testified that the inner side of the upper walk was about 3 inches higher than the lower, and that the curb side was about 2 inches higher, while another witness said that, according to actual measurements, the differences were slightly less. The court brushed aside this conflict in the evidence as immaterial, and said the real question in the case was whether the walk was built and maintained by the city in an unsafe and dangerous condition for pedestrians using reasonable care for their own safety, and concluded by saying: "We cannot hold that a walk of two smooth granitoid surfaces built upon two different levels, varying in height of from two to three inches and connected with smooth bevel surfaces, is proven to be unsafe and dangerous to travelers thereon using reasonable care for their own safety simply because some one has been injured by falling on it. . . . No reasonable mind, it seems to us, could foresee that an injury would happen to a traveler thereon while exercising reasonable care. To hold that this sidewalk as constructed was not reasonably safe within the meaning of the law would be virtually to hold that all walks should be smooth and level. This would require of cities perfection in the construction of their walks and would make them vir-

tually insurers against all damages; but the law of this State does not require such exactions, and our courts have repeatedly refused to hold cities and villages liable in such cases as this one. When a city or village has exercised reasonable care and prudence to construct its sidewalks in a reasonably safe condition for travelers using reasonable care for their safety, it has done all the law required of it in that regard. It is not required to foresee and provide against every possible danger or accident that may occur.'' (Citing *City of Chicago v. Bixby, City of Chicago v. Norton, Beltz v. City of Yonkers, supra.*)

The foregoing cases enunciate the doctrine consistently adhered to by the courts of this State, and the underlying reasons therefor. The evidence in the case at bar is clear and not conflicting. The driveway upon which plaintiff fell was smooth and in good condition, and the only possible defect thereon was the one-half inch projection of the metal plates over the curb. This defect was so slight that no reasonable mind, it seems to us, could foresee that an injury would result to a traveler thereon while exercising reasonable care, and accordingly we adhere to the established rule in this State, as shown by the foregoing decisions, that the question of defendant's liability is one of law. Plaintiff cites no decision holding that so slight a defect will render the city liable for negligence, and since the facts are not disputed, the court should have directed the jury to return a verdict in favor of defendant as a matter of law.

The judgment of the circuit court is therefore reversed.

*Judgment reversed.*

SCANLAN, P. J., and SULLIVAN, J., concur.