Irene Arvidson, Appellee, v. City of Elmhurst, a Municipal Corporation, Appellant.

Gen. No. 10,846.

Second District.

January 3, 1956.

Released for publication January 23, 1956.

Sears and Streit, and George E. Billett, all of Chicago, for appellant; Barnabas F. Sears, George E. Billett, Lloyd J. Tyler, Jr., and C. Robert Yellin, all of Chicago, of counsel.

Vogel & Vogel, of Chicago, for appellee; L. H. Vogel, R. C. Vogel, and R. B. Johnstone, all of Chicago, of counsel.

JUSTICE CROW delivered the opinion of the court.

The defendant, City of Elmhurst, appeals from a verdict and judgment in favor of the plaintiff Irene Arvidson, for $9,000, in a personal injuries suit. The trial was had before the Court and a jury. The defendant filed motions for a directed verdict at the close of the plaintiff's evidence and at the close of all the evidence, for judgment notwithstanding the verdict, and for a new trial. All were denied by the Trial Court.

The plaintiff in her complaint alleged, so far as material, that on October 20, 1950 she was walking upon a sidewalk which ran north and south on the west side of South York Street in Elmhurst; that she was in the exercise of due care for her own safety; that the defendant had control over the sidewalk and owed a duty to the plaintiff to maintain the sidewalk in a good and safe condition; that the defendant allowed the sidewalk to be and remain in bad and unsafe repair and condition, and permitted it to be and remain broken, decayed, uneven, cracked, and lower in level than other portions thereof immediately adjacent thereto; that it was permitted to remain unguarded and without any warning sign; that the dangerous and unsafe condition continued for a long space of time prior to the time of the injuries, at which time the defendant could, or, in the exercise of reasonable care, should have had notice thereof and could or should have repaired it or guarded the condition and warned the public and the plaintiff. The defendant in its answer, so far as material, denied the charges of negligence. There were originally certain other defendants besides the City of Elmhurst,—namely, the owners and occupants of the real estate abutting the sidewalk,—but their motions for directed verdicts at the close of the plaintiff's case were allowed, and the only matter before us now concerns the defendant City of Elmhurst.

The defendant's theory is that it was free from negligence as a matter of law; that the plaintiff was guilty of contributory negligence as a matter of law; that the plaintiff's instruction Number II was erroneously given; that the Court erroneously refused to give the defendant's instruction Number I; and that the damages are excessive. The plaintiff's theory is that the questions of negligence and contributory negligence were questions for the jury, there was no error in the instructions, and the damages are not excessive.

185

A review of the evidence indicates that the plaintiff pedestrian fell, while walking northwardly alone, on the west sidewalk which runs north and south in front of French Cleaners and Dyers, Inc., on South York Street, in Elmhurst, about 4:00 p. m., October 20, 1950; the weather was clear and pleasant, and it was light. York Street is a principal street running through the city; the fall occurred near Adelaide and York Streets, in the business section, though most of the stores are a few blocks north of that point. The plaintiff had parked her car on the west side of York Street adjacent to the curb, got out of the car on the driver's side and walked to the parking meter at the front of the car. There were some children waiting for her in the plaintiff's car while she was to do an errand. After she had deposited some coins in the parking meter she turned around, started out on her errand, was walking back towards or in the general direction of her car, looked toward or into the car, spoke to the children about putting another coin in the meter if she stayed longer than expected, took about three steps on the sidewalk, and had covered about one and one-half slabs of concrete when at that point she stepped with her right foot in such a manner that the heel was on a slab, to the south, of a somewhat higher level than the toe or sole and the toe or sole went down on the adjoining slab, immediately to the north, that was somewhat depressed, which caused her ankle to turn and she fell, resulting in some serious injuries to her left ankle, including a fracture. She was wearing a shoe that had a cuban heel, with a strap and buckle on the side.

The difference in level, at its maximum, between the two adjoining slabs of the sidewalk was estimated by the plaintiff and by one other witness, an employee of an abutting store nearby, at "about two inches." Apparently neither the plaintiff nor that other witness actually measured it. That other witness in fact said

186

she did not think she'd ever got down and looked at it, and the plaintiff simply said "I think the difference in level between the slabs was about two inches." Such estimates of "about two inches" constitute the only evidence in the record of what the difference is, except such reasonable inferences as may be made from the photographs in evidence. The lower level slab, the one lying to the north, in the direction the plaintiff was walking, slanted toward the street and the difference in level progressively increased somewhat in the direction toward the street and progressively decreased somewhat in the direction toward the abutting buildings. The condition had existed for at least a year, and probably several years, before the plaintiff fell. The two slabs in question are in a part of the sidewalk immediately adjacent to the curb line. The whole sidewalk appears to be laid in such a way that there are two longitudinal north-south dividing lines between slabs, each dividing line being respectively a few feet west of the curb-line and between the curb-line and the abutting buildings. The depressed slab is so depressed only between the curb-line and the first longitudinal north-south line west of the curb. The balance of that area up to the abutting buildings appears perfectly level. And the balance of the whole sidewalk in the general region appears perfectly level and the slabs appear to be flush with each other.

The plaintiff apparently did not actually know the condition of the sidewalk before the fall, although she had been on errands about twice a month for about 6 months previously to the same place where she was going this time; nor did the City of Elmhurst apparently have actual notice or knowledge of the condition prior thereto, though it presumably had constructive notice,—at least it makes no point on this appeal as to that.

The immediate area of the difference in level between the slabs was, under these circumstances, and at

this time of day, plainly visible and not concealed if the plaintiff had been looking. There was no crevice, crack or break in either of the adjoining slabs at the point of the difference in levels where the fall occurred. There was simply a graduated difference in levels. There is no evidence of prior injuries to this plaintiff or other parties at and because of the particular condition of this sidewalk at this point as tending to show any common cause of several accidents to be a dangerous, unsafe condition or thing. There is some evidence that there had been no previous reports or complaints to the defendant concerning the condition of this particular sidewalk.

Some pictures of the sidewalk are in evidence. Those and the other testimony showed the one slab of the sidewalk, to the south, along the curb, adjacent to the other slab, to the north, which other slab was somewhat depressed and not on a level with the first. From such study of the pictures as it is possible for us to make it would appear that the difference in level at its maximum point, near the curb, is probably not as much as two inches,—very likely less,—and certainly no more,—and becomes gradually lesser away from the curb. The difference in levels was evidently caused by the sinking, for some reason, of the depressed slab, after construction, perhaps because of weather or natural conditions. There is no evidence as to what the specific reason therefor was, but there is no evidence, in any event, that the slabs were originally so constructed with such a difference in levels.

The area where the accident happened apparently was not then congested,—there was apparently no traffic to speak of at that point at the time of the injury. The evidence does not show that the heel of the plaintiff's shoe caught on the edge of the slab to the south or that she tripped or stumbled by reason of having the heel caught on the edge of that slab.

The alleged obstructions or defects in the streets or sidewalks of a city, to make the municipal corporation liable, must be of such a nature that they are in themselves dangerous, or such that a person, exercising ordinary prudence, cannot avoid danger or injury in passing them,—in general, such defects as cannot be readily detected: City of Aurora v. Pulfer (1870) 56 Ill. 270. A city is not required to foresee and provide against every possible danger or accident that may occur; it is not an insurer against accidents; it is under no obligation to keep its streets and sidewalks absolutely safe for users thereof; it is required only to keep its streets and sidewalks in a reasonably safe condition for the accommodation of travelers and pedestrians who are themselves exercising due and reasonable care and caution for their own safety, and is liable only for its failure to exercise ordinary, reasonable care and prudence: City of Chicago v. Bixby (1876) 84 Ill. 82; Village of Mansfield v. Moore (1888) 124 Ill. 133; City of Gibson v. Murray (1905) 216 Ill. 589; Molway v. City of Chicago (1909) 239 Ill. 486; Brennan v. City of Streator (1912) 256 Ill. 468. The alleged defect, to render the municipality liable, must be such as could have been foreseen and prevented by it by ordinary care and prudence,—it is not expected to anticipate unusual or extraordinary happenings: Storen v. City of Chicago (1940) 373 Ill. 530. The question arises in each case whether the alleged obstruction or defect is of such a character that the party using the street or sidewalk at the time in question and under the circumstances then existing, in the ordinary way and using ordinary care for his own safety, is exposed to an unnecessary and unreasonable risk; that is usually a question of fact, but it may become a question of law where there is no particular dispute about the material facts and the alleged obstruction or defect is of such a character that reasonable minds cannot

189

differ about it: Brennan v. City of Streator, supra. The liability of a municipality to a party injured is commensurate only with the duty owing to such person at the time and under the circumstances existing when the injury was sustained; in the absence of a duty to perform some act or service for the security of the plaintiff at the time and under the circumstances existing when her particular injury is sustained there is no fault of the municipality in nonperformance so far as she is concerned, even though such duty or some such duty may be owed to her and others at different times or under different circumstances: City of Monmouth v. Sullivan (1880) 8 Ill. App. 50 (Second Dist.).

Illinois Law and Practice, Vol. 9 (Cities, Villages, Etc.), pp. 54 and 62, summarizes the principles applicable to a case of this kind:

"P. 54—In general, it is the duty of a municipal corporation to use ordinary or reasonable care and prudence to keep its streets and sidewalks in a reasonably safe condition for public travel. It must exercise a degree of care which is commensurate with the danger to be apprehended, and whether it has maintained its streets and sidewalks in a reasonably safe condition for travel in the ordinary modes, or has been guilty of negligence, is to be determined in each case by the particular circumstances. Liability to a person injured is commensurate only with the duty owing to such person at the time and under the circumstances existing when the injury was sustained.

.     .     .     .     .

"P. 62—In general, obstructions or defects in streets or sidewalks, in order to subject the municipality to liability, must be of such a nature that they are in themselves dangerous, or such that a person exercising ordinary prudence cannot avoid danger or injury in passing them."

190

In City of Chicago v. Bixby (1876) 84 Ill. 82, referred to above, a portion of the sidewalk was up to grade; an immediately adjoining portion was ten or twelve inches below grade; a step had been placed at the intersection of the walks, about 6 or 7 inches wide and 2 inches thick, extending the whole width of the sidewalk, and it was firmly fastened; there was ice and it was slippery; the plaintiff was descending from the upper to the lower walk and was on the step when she fell and sustained certain injuries; the plaintiff recovered a verdict and judgment below; the Supreme Court reversed and remanded. The Court said pp. 85–86—

"The city was bound only to the exercise of reasonable prudence and diligence in making this step. It is not required to foresee and provide against every possible danger or accident that may occur. It is not an insurer against accidents, but is only required to keep its streets and sidewalks in a reasonably safe condition for the accommodation of travelers and pedestrians, and we are of opinion that the city has not failed in its duty in this instance. We think the evidence shows that the sidewalk was reasonably safe, and, if so, the city should not be held liable. . . .

". . . We are clearly of opinion that the evidence establishes no negligence on the part of the city, and that the evidence fails to sustain the verdict."

In City of Chicago v. Norton (1904) 116 Ill. App. 570 (First Dist.), the plaintiff was walking west on a sidewalk of stone flagging and fell near the middle of the walk where a party line between adjoining properties, if extended, would have crossed the walk; east of that line the sidewalk had a slightly greater pitch than it had west of the line, because of which, though it was level at the curb, the walk next to the buildings and east of the line was 5 inches higher than the walk west of the line, and at the point the plaintiff fell in

going from the higher to the lower level the difference in level was 2½ to 3 inches. The plaintiff recovered a judgment below; the Appellate Court reversed with a finding of fact. The Court cited City of Chicago v. Bixby, 84 Ill. 82, Beltz v. City of Yonkers, 148 N. Y. 67, 42 N. E. 401, and Hermes v. City of Chicago (No. 9818, not reported), and said, pp. 572-3:

". . . If the existence of a difference in level of three inches between two adjoining pieces of flagging or pieces of plank in a sidewalk may be held to render such sidewalk not reasonably safe and be deemed evidence from which the fact of negligence in respect thereto may be inferred and found, then there is scarcely any sidewalk in any city that is reasonably safe. It is a matter of common knowledge that such differences in level may be found in almost every sidewalk in Chicago and a person walking along a sidewalk will step from a plank or stone three inches above the plank or stone upon which he steps without observing the difference in level. From such a difference in level, danger is not in common experience to be anticipated and a city can only be found guilty of negligence when the defect in a sidewalk was such that a reasonably prudent man should anticipate some danger to persons walking thereon.

"In our opinion the sidewalk in question was reasonably safe and the defendant, the city of Chicago, was not guilty of negligence in respect thereto."

In Powers v. City of East St. Louis (1911) 161 Ill. App. 163 (Fourth Dist.), there was a granitoid sidewalk on the west side of a north-south street; near the middle of the block a segment thereof 25 feet in length was built practically level; the immediately adjoining parts of the walk north and south of that segment were built 3 inches higher at the inside or along the buildings and an inch or 2 higher at the outside or curbside; at the junctions of the lower level segment with the adjoining higher level parts there were bevels of

about 45 degrees or more; at the center of the walk at the north bevel the difference in level between the lower and higher parts was about 2–2½ inches; otherwise the walks were smooth and even; the plaintiff on an afternoon of a clear, bright day while walking north, fell at the north bevel or difference in level between the lower and higher parts while going from the lower to the higher part, and sustained certain injuries. The plaintiff recovered a judgment below; the Appellate Court reversed without remanding. The Court said, pp. 165–6, and 166–7:

". . . The real questions in this case are, was the walk as it was built and maintained unsafe and dangerous for pedestrians using reasonable care for their own safety, and was the plaintiff in the exercise of reasonable care for her own safety at and just before the time she was injured? There is no evidence to support the proposition that the walk was thus dangerous and unsafe except the bare fact of the difference in the height of the two portions of this walk and the incline spoken of, and the further fact that the plaintiff and one other person had been injured there. All the surfaces were smooth and the difference in the heights could have been easily seen for fifty feet or more by any person with fairly good eyes who should be walking toward the same on a clear, bright day if he had but looked once at the walk ahead of him. There was nothing inherently dangerous to a traveler in this walk. There was no concealed defect or imperfection in its construction or make-up.

.  .  .  .  .

". . . We cannot hold that a walk of two smooth granitoid surfaces built upon two different levels, varying in height of from two to three inches and connected with smooth bevel surfaces, is proven to be unsafe and dangerous to travelers thereon using reasonable care for their own safety simply because some

193

one has been injured by falling on it. After such an accident, as said in the Bixby case cited below, it may be natural for persons then to conclude it was not safe. But it is the mere fact of the injury that suggests the idea of want of proper construction, and the disinclination of the human mind to attribute the fall to the negligence of the traveler. No reasonable mind, it seems to us, could foresee that an injury would happen to a traveler thereon while exercising reasonable care. To hold that this sidewalk as constructed was not reasonably safe within the meaning of the law would be virtually to hold that all walks should be smooth and level. This would require of cities perfection in the construction of their walks and would make them virtually insurers against all damages; but the law of this state does not require such exactions, and our courts have repeatedly refused to hold cities and villages liable in such cases as this one."

In Walter v. City of Rockford (1947) 332 Ill. App. 243 (Second Dist.), there was a crack between two adjoining slabs or sections of a concrete sidewalk of about ¾ of an inch, a part of one slab was about 1 inch higher than the adjoining slab, and the plaintiff while walking along on a clear, bright morning from the lower to the higher slab did not raise one foot sufficiently high to clear the one inch raise, stubbed the toe of her shoe, fell, and was injured; the verdict was for the plaintiff; upon motion of the defendant for judgment notwithstanding the verdict the Trial Court entered a judgment for the defendant; the Appellate Court affirmed. After referring to Orban v. City of Chicago, 313 Ill. App. 144, Kuhn v. City of Chicago, 319 Ill. App. 525, and citing City of Chicago v. Bixby, 84 Ill. 82, City of Chicago v. Norton, 116 Ill. App. 570, and Puck v. City of Chicago, 281 Ill. App. 6, the Court said, pp. 250-251:

"There is no necessity of further reviewing the cases. A reviewing court always hesitates to conclude that a

194

jury acted unreasonably and that there is no evidence in the record supporting its verdict. The law is, however, that a city can be found guilty of negligence only when the defect in a sidewalk is such that a reasonably prudent man should anticipate some danger to persons walking upon it. We agree with the trial court. This defect was so slight that no reasonable mind, it seems to us, could foresee that an injury would result to a pedestrian upon this sidewalk while exercising reasonable care for her own safety."

In Bybee v. City of Collinsville et al. (1947) 332 Ill. App. 353 (Fourth Dist.), an abstract decision, a certified copy of the opinion having been made available to us, a part of the sidewalk had been broken in order for some repairs to be made to plumbing leading to an adjoining building, a hole had been dug, the hole was filled, and when filled the hole was level with the sidewalk at the edges and was an inch higher in the center; while she was walking along, the plaintiff's right foot, she said, went down lower than the sidewalk and she fell, suffering some injuries; the evidence most favorable to the plaintiff was that there was a 1½ inch to smaller depressed area in a part of the walk at the point of that hole. The plaintiff recovered a verdict; the defendants' motions for directed verdicts, reserved, and for judgments notwithstanding the verdicts were allowed by the trial court and judgments entered for the defendants; the Appellate Court affirmed. The Court cited Powers v. City of East St. Louis, 161 Ill. 163, Bleiman v. City of Chicago, 314 Ill. App. 471, and said (p. 7 of the opinion)—

"The foregoing cases and cases cited in them enunciate the rule followed by the courts of this state. The plaintiff cites no decision which indicates that the facts of this case should render the defendants liable.

"In the case at bar the evidence concerning the difference in elevation between the refilled area and the adjacent sidewalk, considered with all reasonable in-

195

ferences from it in favor of the plaintiff, established a depression which was so slight and inconsequential that the trial court was justified in holding it did not demonstrate actionable negligence."

And in Bleiman v. City of Chicago (1942) 314 Ill. App. 471 (First Dist.), at a driveway two steel plates rested on the curb and the pavement, where they were fastened; the plates extended up over the curb, projecting one-half inch above the curb and driveway; the plaintiff in walking from the adjoining building and sidewalk or driveway to the street tripped his heel on the ½ inch projection of the plates, fell, and suffered injuries. The plaintiff recovered a verdict and judgment; the Appellate Court reversed, without remanding. The Court cited City of Aurora v. Pulfer, 56 Ill. 270, City of Chicago v. Norton, 116 Ill. App. 570, City of Chicago v. Bixby, 84 Ill. 82, Beltz v. City of Yonkers, 148 N. Y. 67, 42 N. E. 401, Powers v. City of East St. Louis, 161 Ill. App. 163, and said, p. 478:

"The foregoing cases enunciate the doctrine consistently adhered to by the courts of this State, and the underlying reasons therefor. The evidence in the case at bar is clear and not conflicting. The driveway upon which plaintiff fell was smooth and in good condition, and the only possible defect thereon was the one-half inch projection of the metal plates over the curb. This defect was so slight that no reasonable mind, it seems to us, could foresee that an injury would result to a traveler thereon while exercising reasonable care, and accordingly we adhere to the established rule in this State, as shown by the foregoing decisions, that the question of defendant's liability is one of law. Plaintiff cites no decision holding that so slight a defect will render the city liable for negligence, and since the facts are not disputed, the court should have directed the jury to return a verdict in favor of defendant as a matter of law."

In the light of those cases and authorities, and under the facts and circumstances of this particular case, we believe the alleged obstruction or defect in the sidewalk here was not of such a nature that it was in itself inherently dangerous. It was not such that this plaintiff, exercising ordinary prudence, under the circumstances, could not have avoided any danger or injury in passing. We think, under these facts and circumstances, the defendant had kept its sidewalk at this point in a reasonably safe condition for the accommodation of a pedestrian exercising due and reasonable care and caution for her own safety. The defendant's responsibility to this plaintiff was commensurate only with the duty it owed her at the time and under the circumstances existing when the injury was sustained.

So far as Illinois cases are concerned, the plaintiff has referred us to White v. City of Belleville (1936) 364 Ill. 577, reversing and remanding 284 Ill. App. 322 (Fourth Dist.), the same case being later affirmed in 290 Ill. App. 616 (abst.); Shepard v. City of Aurora (1955) 5 Ill.App.2d 12 (Second Dist.); Wayland v. City of Chicago (1939) 300 Ill. App. 608 (First Dist., abst.); Orban v. City of Chicago (1942) 313 Ill. App. 144 (First Dist., abst.); and Kuhn v. City of Chicago (1943) 319 Ill. App. 525 (First Dist., abst.).

In White v. City of Belleville the sidewalk had been broken and repaired; there remained a depression of from 2 to 3¼ inches depth in the repaired part; some crevices were left by the detachment of the repaired part from the main sidewalk; one of such crevices was sufficiently wide to permit the heel of a woman's shoe to enter; the plaintiff in the evening, after 8 p. m., walked across or upon the broken section of the walk and the heel of her shoe dropped into a hole; she was thrown forward, fell, and suffered certain injuries. The plaintiff recovered a verdict and judgment; the Appellate Court reversed without remanding on the basis the defendant was, as a matter of law, not negli-

197

gent; the Supreme Court reversed and remanded to the Appellate Court holding that the defendant's alleged negligence was a question of fact for the jury; and later the Appellate Court affirmed the judgment for the plaintiff. The facts in that case are substantially different from those in the case at bar and it is not determinative here.

The same comment may be made as to Shepard v. City of Aurora. There there was a defective projection upwards about 1½ inches from the sidewalk of the corner of the flange of a trap door in the sidewalk, partially concealed from the plaintiff's view by a corner of a display window, at a point where the public might reasonably assume was a normal, level segment of the walk, other people had recently stumbled on the trap door, and the plaintiff while walking on the walk caught her foot thereon, fell, and was injured; we held, in part, that under those circumstances the particular condition of that walk was such that a reasonably prudent man should anticipate some danger to persons walking upon it while exercising reasonable care for their own safety and that the jury could find negligence. Those facts are not the facts of the case at bar.

In Wayland v. City of Chicago, a certified copy of the opinion having been made available to us, though the facts are somewhat obscure, and the Court said there was a sharp conflict in the evidence as to the condition of the sidewalk, evidently the plaintiff stepped in a hole in a sidewalk, fell, and was injured,—while walking in the evening apparently after dark,—there apparently being some kind of a depression in the walk whereby one slab was lower than an adjoining slab, and there being also evidence the walk had been broken in places and filled with dirt; a verdict and judgment for the defendant was reversed and remanded. Among many other reversible errors found, the Court held that an instruction which, in

198

part, told the jury that if they found "the plaintiff's injuries,—resulted solely and exclusively from the existence of a difference in level between two slabs of the sidewalk—then in such case I charge you, as a matter of law, that the City of Chicago would not be liable for any injuries sustained as the result of such mere difference in level" was erroneous, the Court pointing out that it is conceivable a very dangerous situation may be created by a difference in the level between slabs in a sidewalk. Here the facts and circumstances are substantially different, and no such instruction is involved.

Orban v. City of Chicago, a copy of the opinion again being made available to us, concerned a sidewalk where there was some difference of level in adjoining slabs, starting at the abutting building line and growing larger gradually toward the curb, the evidence as to the depth of the depression varying from less than an inch to four inches, but the Court saying the defect was substantial, not a mere slight difference in level; the plaintiff while walking in the evening after dark stumbled over the depression, fell, and was injured,—it not being clear from the evidence as indicated in the opinion whether she was at the moment going from the lower to the higher slab, or vice versa, although we obtain the impression she was going from the lower to the higher slab; a verdict and judgment for the plaintiff was affirmed, the Court holding the jury might, under the facts and circumstances, reasonably find the sidewalk was defective and the defendant was negligent. Again, the facts are materially different from the case at bar and it is not persuasive here.

In Kuhn v. City of Chicago, a copy of the opinion again being made available to us, in the east sidewalk on a north-south street two adjoining slabs, in their entire length across the walk, were not on a level with each other or the rest of the walk; the south slab was

199

raised about 2 or 3 inches higher than the slab to the north; the plaintiff was walking in a southerly direction in the evening after dark; she stumbled her toes,—apparently tripped on the higher slab while going from the lower to the higher slab, fell, and was injured; a verdict and judgment for the plaintiff was affirmed, the Court saying the question of the defendant's negligence was for the jury, and following Orban v. City of Chicago. Again, those facts are not the facts of the case at bar, and the case is not persuasive here.

We conclude that, at the time and under the facts and circumstances in evidence here, the defendant, as a matter of law, was not negligent; that the defendant's motion for directed verdict, at the close of all of the evidence, or its motion for judgment notwithstanding the verdict should have been allowed; and that the judgment should be and is hereby reversed, without remanding.

Reversed.

DOVE, P. J. and EOVALDI, J., concur.