Sarah Puck, Appellee, v. City of Chicago, Appellant.

Gen. No. 38,107.

[redacted]

[redacted]

[redacted] Opinion filed June 17, 1935.

WILLIAM H. SEXTON, Corporation Counsel, and ALEXANDER M. SMIETANKA, City Attorney, for appellant; LIONEL J. BERC and PATRICK T. HARRINGTON, Assistant City Attorneys, of counsel.

JACOB BASKIN, of Chicago, for appellee.

MR. PRESIDING JUSTICE O'CONNOR delivered the opinion of the court.

Plaintiff brought an action against the defendant to recover damages claimed to have been sustained by her for injuries received on account of defendant permitting a sidewalk to remain out of repair. There was a jury trial and a verdict and judgment in plaintiff's favor for $1,000, and defendant appeals.

The record discloses that between four and five o'clock on the afternoon of December 27, 1932, plaintiff and her 20-year old daughter were walking north on the sidewalk on the west side of State street, a short distance south of Monroe street, in Chicago. There was a cement sidewalk of probably more than 25 feet in width at the place in question. A number of people were on the sidewalk at the time. Plaintiff was walking about the middle of the sidewalk when she stumbled and fell and was injured.

The evidence tends to show that there was a step in the sidewalk about two inches in height which extended

from the curb on the east to about the middle of the walk. As plaintiff was stepping down at this point she tripped and fell.

At the close of plaintiff's evidence the city moved for a directed verdict, which was overruled; it stood on its motion and offered no evidence, and contends that the court should have directed a verdict in its favor.

The evidence, as to the condition of the sidewalk and as to how the accident occurred, is brief. Plaintiff's daughter testified that she and her mother were walking north on the west sidewalk of State street; that it was a pleasant afternoon; that quite a few people were walking in front and back of her; that her mother stumbled and fell; that she was walking just to the left of her mother; that after her mother fell, "I saw, at the center of the sidewalk an irregularity extending to the street. It is a step about two inches high, extending about half way across the sidewalk"; that before the accident she had "noticed this step present in the sidewalk for a period of several years. I stumbled over it several times myself," and that it was in the same condition then as when her mother fell; that there was no hole in the sidewalk, "simply an irregularity on a straight angle about two inches high. Mother was walking north and had to step down over this irregularity"; that she never called her mother's attention to the condition of the sidewalk. "This sidewalk sort of slopes"; that her mother fell on her face toward the north; that she stepped to go down, lost her balance and fell on her face. "I didn't step over the irregularity, I stepped over the other side of where the irregularity began and was only a foot to the left of mother."

Pearl Goldstein testified there was a step on the sidewalk; "If you were walking south you could see it. If you were walking north you couldn't. It was half way in the middle of the sidewalk about two and one-half

to three inches high. I passed it every day I went to work. . . . It is not there any more. It was changed about after Christmas, 1932."; there was no hole in the sidewalk. Her cross-examination continues: "Mr. Harrington: Simply an elevation? A. Yes. Q. Not quite 180 degrees; it was just about 170 you would say? A. Yes."

Plaintiff testified that at the time in question she and her daughter were walking north about the middle of the sidewalk; that a lot of people were walking there at the time; that there was no hole in the sidewalk, "The sidewalk was higher on one side of the sidewalk; the south, but was higher than the north about two and one-half inches and I had to step down. The lowest side was on the north side." This is substantially all the evidence as to how the accident occurred and as to the condition of the sidewalk. There was further evidence as to the nature of plaintiff's injuries but it is unnecessary for us to refer to them here.

The defendant contends the evidence shows that at the place in question, the sidewalk "sloped downward toward the north. . . . an irregularity or step in the sidewalk. . . . an inclined step or ramp running down from the higher grade of the sidewalk to the south of the ramp to the grade of the sidewalk to the north of the ramp which was from two to three inches lower. The ramp being about four feet in length north and south and extending from the curb to the center of the sidewalk, east and west." We think this statement by counsel for defendant is not warranted by the evidence. There is no evidence in the record from which it could be said that there was a ramp running from the step toward the north.

Counsel for plaintiff in his brief says, "The evidence tends to prove that there was a difference in level of approximately two inches between the flags of the sidewalk for a portion of its width. In other words, that

there had either been a sinking or a raising of one of the flags for a portion of the width of the walk.'' It is not at all clear that the evidence warrants the statement of counsel just quoted as to the condition of the sidewalk at the time in question, nothing to show ''a sinking or a raising.'' In fact, we think all the evidence fails to disclose the condition of the walk, and the best that one can do is to surmise and conjecture as to its condition. Whether the walk was allowed to become out of repair, or whether it was constructed with a two inch step up, cannot be determined from the evidence in the record.

While there are cases in this State holding that a difference in the level of two sections of a sidewalk of from $2\frac{1}{2}$ to 3 inches or higher would not render the city liable for one tripping and falling at such place, yet the question is not free from difficulty; especially when we consider the crowded conditions of the sidewalks in the Loop of Chicago. Cases which tend to hold that there was no liability because of a difference in the level of parts of a sidewalk are *City of Chicago v. Bixby,* 84 Ill. 83; *City of Chicago v. Norton,* 116 Ill. App. 570; *Powers v. City of East St. Louis,* 161 Ill. App. 163; *Owens v. City of Chicago,* 162 Ill. App. 196.

There is also some doubt in the cases reported in this State as to whether a city is liable for injuries occasioned by one falling upon a sidewalk where the city has constructed the sidewalk according to a plan adopted, unless it can be said, as a matter of law, that such a plan of construction was so palpably dangerous that the city did not exercise reasonable discretion in adopting the plan upon which the sidewalk was built. Some cases are to the contrary and hold that the question of whether the city was negligent in constructing a given sidewalk is generally a question of fact for the jury. *Pfeifer v. Town of Lake,* 37 Ill. App. 367; the dissenting opinion by Judge Adams in *Healy v. City of*

*Chicago,* 131 Ill. App. 183; *Hogan v. City of Chicago,* 188 Ill. 551, and cases there cited.

We do not pass on these questions here for the reason that, as above stated, the evidence leaves the condition of the sidewalk so uncertain, at the time in question,—as to whether this condition was the result of a plan or resulted from allowing the sidewalk to become in a state of disrepair—that we think there should be a retrial of the case. And since it was stipulated on the trial that plaintiff had received $175 for which she executed a covenant not to sue, to Warner Brothers Theater, one of the other defendants, this amount should be credited on any verdict that might be obtained. *City of Chicago v. Babcock,* 143 Ill. 358; *Garvey v. Chicago Rys. Co.,* 339 Ill. 276.

There was no error in the court's action in refusing to allow the stipulation of the parties in this respect to be heard by the jury because it was agreed that plaintiff had executed a covenant not to sue, in which case the City would not be released from its liability, if any, except to the extent of $175.

We think there was no merit in defendant's contention that plaintiff did not prove she was in the exercise of ordinary care for her own safety, nor that the condition of the sidewalk was not the proximate cause of her injuries. These were questions for the jury. Long ago our Supreme Court held that a pedestrian upon a sidewalk may ordinarily assume that it is in a reasonably safe condition for travel, and is not absolutely bound to keep his eyes constantly fixed on the sidewalk in search of possible holes or other defects. *City of Chicago v. Babcock,* 143 Ill. 358; *Graham v. City of Chicago,* 260 Ill. App. 590. In the *Graham* case we said (p. 594) : "A pedestrian is not obliged to keep his eyes glued to a sidewalk, but may assume that it is in a reasonably safe condition. *City of Chicago v. Babcock,* 143 Ill. 358."

12

We regret to say that before disposing of this case we deem it our duty to call counsels' attention to Rule 7 of this court, which provides that the "Argument shall be confined to discussion of the points made . . . in the brief and no others, and in the order in which the points are made." Counsel for defendant, in their briefs, under "Points and Authorities," make five points but only three points are argued, while counsel for plaintiff makes two points but argues three. Obviously this is not in accordance with Rule 7. This rule was prepared with a great deal of care, is plain, simple and logical, and it will be of great assistance to this court if it is followed.

For the reasons stated the judgment of the circuit court of Cook county is reversed and the cause remanded.

*Judgment reversed and cause remanded.*

McSURELY and MATCHETT, JJ., concur.