(No. 29497.—

WALTER R. SCHUELER *et al.,* Appellants, *vs.* HAROLD R. BLOMSTRAND *et al.,* Appellees.

*Opinion filed Sept. 18, 1946—Rehearing denied November 14, 1946.*

FRED B. BENNETT, of Woodstock, and PHILIP H. TREACY, of Chicago, (EUGENE P. KEALY, of Chicago, of counsel,) for appellants.

DAVID R. JOSLYN, and CHARLES S. PARKER, (HERBERT O. KRENZ, of counsel,) all of Woodstock, for appellees.

Mr. JUSTICE WILSON delivered the opinion of the court:

A decree of the circuit court of McHenry county dismissed the amended complaint of the plaintiffs, Walter R., Albert and Arthur Schueler, seeking to remove as a cloud upon their title a deed dated November 10, 1936, from their mother, Alvina Schueler, deceased, to the defendants, Harold R. and Mildred Blomstrand, to an improved parcel of real estate in McHenry county and granted the relief sought by defendant and counterclaimant, Harold R. Blomstrand, adjudging him the owner of the property. Plaintiffs prosecute a direct appeal, a freehold being necessarily involved.

In 1915, upon her husband's death, Alvina Schueler became the owner in fee simple of real estate improved with an eight-room two-story dwelling located on the east side of the Fox river, about one mile north of the McHenry bridge. Thereafter, Mrs. Schueler was in possession of the premises and occupied the property as a summer residence about seven months of the year, usually from early spring until November. On February 23, 1933,

she conveyed the property to her granddaughter, Beryl Spies, and husband, by warranty deed, which was caused to be placed of record in due course. These grantees, in turn, on February 24, 1933, reconveyed the property to Mrs. Schueler. This second deed was not placed of record until November 24, 1936. On the same day, the challenged conveyance, a quitclaim deed to the property from herself to Blomstrand, dated November 10, 1936, was recorded. Mrs. Schueler had become acquainted with Blomstrand in 1928 or 1929 when she was a customer, and he, an employee, of the Logan Square State Savings Bank, in Chicago. In 1932, the bank closed and, subsequently, Blomstrand became a member of a real-estate firm and, later still, in 1934, went into business for himself under the name of H. R. Blomstrand & Company. Mrs. Schueler owned mortgage notes and real-estate bonds having an aggregate par value between $18,000 and $20,000, all the obligations being in default. She turned these securities over to Blomstrand who deposited them with the respective bondholders' committees. He was chairman of many, if not all, of the committees, and his real-estate company the depositary. Remittances representing collections on the defaulted bonds were sent to Mrs. Schueler. During this period, Blomstrand advanced modest sums to her ranging from $25 to $75. He kept no record of the advances, and she repaid him in full. Mrs. Schueler, on November 10, 1936, also owned an improved parcel of real estate in Chicago, located at 5030 Berteau avenue. She paid $9200 for this property in, or prior to, 1921. In 1936, the mortgagee, according to Blomstrand, was pressing for payment of the mortgage indebtedness in the principal amount of $5000. Blomstrand paid her $100 for her equity in the property, and purchased the mortgage note for approximately $4000. Interest for five years, amounting to more than $1000, was in default, and taxes were in arrears. It does not appear, however, that Blomstrand paid the past-

due interest, or whether he paid the taxes in full or compromised them. Eliminating details, Blomstrand paid Mrs. Schueler $100 for the property, paid off the mortgage debt at the rate of eighty cents on the dollar, and moved into the propery on Berteau avenue, a five- or six-room house, which he, up to the time of the trial in 1945, occupied as his home. Four months later, on March 23, 1937, he wrote to Mrs. Schueler, who was then in Florida, saying, in part: "In connection with the property that you own at 5030 Berteau Avenue, I am sorry to advise you that Mr. Charles Porter was in desperate need of moneys and recently disposed of the mortgage by selling it to a person, who at the present time is about to foreclose on the property. * * * The owner of the mortgage has suggested that he will pay a sum of $50.00 or $75.00 for the deed to the property so that he does not have to foreclose. * * * Kindly advise me whether I should give a deed to the property and at least get something for the title."

On the same day that Blomstrand paid Mrs. Schueler $100 for her equity in the Berteau avenue property, the deed to the property on Fox river was executed. Apparently, she turned over to Blomstrand the deed from Beryl Spies to herself reconveying the property in controversy. According to Blomstrand, Mrs. Schueler declared that she had placed title in her granddaughter and the latter's husband for convenience to avoid claims or judgments which might be entered against her and, for this reason, had never caused the deed to be recorded, adding: "Now that you have the deed, you can copy the legal description of it and then you will have to record both of them because you will have to put the title first to me and then to you." In this connection, we observe that the deed from Mrs. Schueler to Blomstrand, dated November 10, 1936, not only contains the legal description, but, also, the following language taken *verbatim* from the deed of February 24, 1933, from Beryl Spies and her husband to Mrs. Schueler:

"including also all the contents of said building excepting the bedding and wearing apparel."

On the same day or the day after the deeds to Mrs. Schueler's two parcels of real estate were executed, she also executed a will, dated November 11, 1936, prepared by Blomstrand. We must note that he is not a lawyer. By this will, she divided her property equally among her four sons, and appointed Blomstrand executor of her will and trustee of her estate, giving him full power and authority "to liquidate any and all assets of my estate after my death and authorize and empower him to distribute equally to my four sons, * * * any and all assets after they have been liquidated by Harold R. Blomstrand."

From the time the deed was executed in November, 1936, to the fall of 1942, Mrs. Schueler occupied the property, as she had in the past, as a summer home for approximately seven months of each year, paid all the taxes, real and personal, maintained the property in a substantial state of repair, incurring expenses of $350 for a concrete seawall, and an additional $150 for landscaping and, in general, exercised complete dominion over the property. No one of her four sons was informed of the conveyance, either by her or by Blomstrand, who saw each of them from time to time.

In October, 1942, Mrs. Schueler purchased from Roy A. Kent a three-year fire-insurance policy covering the property in McHenry. A title search, dated November 18, 1942, obtained at Kent's suggestion, disclosed title in Blomstrand. On December 11, 1942, Mrs. Schueler executed a quitclaim deed conveying the property on Fox river to her sons, Walter R., Albert and Arthur. This litigation followed.

August 20, 1943, Alvina Schueler filed her complaint in the circuit court of McHenry county against the defendants, Harold R. Blomstrand and his wife, charging that she never knowingly executed the deed of November 10,

1936, to Blomstrand; that it was without consideration, and obtained either by fraud or by reason of undue influence exercised by him, a trusted and confidential adviser, who had long occupied a fiduciary relationship to her. Additional allegations are that Blomstrand, hereafter referred to as defendant, obtained possession of the warranty deed from Beryl Spies to Mrs. Schueler by inadvertence and mistake; that, in particular, this deed was folded in with another deed from Beryl Spies conveying the Berteau avenue property in Chicago, and that, when the deed to the property on Berteau avenue was delivered to defendant, the deed to the property on Fox river, folded up, as described, unknown to Mrs. Schueler, and unintentionally, came into defendant's possession. Accordingly, Alvina Schueler asked that the deed from her to defendant conveying the Fox river property be adjudged void as against her and set aside as a cloud upon her title.

Mrs. Schueler died on January 4, 1944, in the eighty-fifth year of her age. She left surviving as her only heirs-at-law her four sons, Walter R., Albert, Arthur and Theodore. By her last will and testament, executed December 7, 1942, she excluded Theodore from participating in her estate for reasons set forth, and bequeathed and devised all of her property to her other three sons, Walter, Albert and Arthur.

After Mrs. Schueler's death, her sons, Walter R. and Albert, as executors of her will, and Walter, Albert and Arthur, individually, were substituted as parties plaintiff and granted leave to file their amended complaint. This pleading contains the essential allegations of the original complaint. Plaintiffs claim title under the deed of December 11, 1942, rather than as devisees under the will. They charge that at no time since November 10, 1936, did defendant assert any rights, or evidence any ownership of the property. Concluding allegations are that defendant continued as confidential adviser to Mrs. Schueler in all

matters pertaining to her real-estate transactions during the period from prior to November 10, 1936, to December, 1942. Defendant Blomstrand and his wife answered the amended complaint, denying its allegations to the extent that they charge the deed was obtained by fraud, mistake or inadvertence, or undue influence exercised by virtue of the fiduciary relationship existing between the parties. Thereafter, defendant filed a counterclaim, subsequently amended by dismissal as to the executors, alleging that, on January 5, 1946, while possessed of the property, plaintiffs entered into the premises and unlawfully withhold possession from him. Defendant asked judgment against plaintiffs, dismissing their complaint and for possession of the property. Plaintiffs answered the counterclaim, denied that defendant was ever in possession of the property, averred again that his claim was fraudulent and, as further answer, adopted the relevant allegations of the amended complaint. Defendant replied to their answer. Evidence was heard by the chancellor, and a decree was entered finding that a fiduciary relationship obtained between defendant and Alvina Schueler in 1936, and had so existed since 1928 or 1929; that defendant and his wife had sustained the burden of proof cast upon them by virtue of the fiduciary relationship and, conversely, that the evidence clearly showed the deed was the voluntary act of the deceased, and that no unfair advantage was taken by defendant, either in its making, execution or delivery; that defendant is the owner in fee of the property, and that plaintiffs unlawfully withhold possession from him. The chancellor found, further, that defendant, never having taken possession of certain items of personal property described in the deed, failed to acquire title to them because the attempted gift was not completed by the delivery of the personalty during the lifetime of Alvina Schueler. The decree entered on December 7, 1945, dismissed the amended complaint for the want of

equity and rendered judgment in favor of defendant for possession of the property on his counterclaim.

The evidence sufficiently discloses that Alvina Schueler signed her name to the deed; that, although then seventy-seven years of age and her vision and hearing somewhat impaired, she was mentally competent, and that defendant caused the deed to be placed of record. This being so, the evidence and the arguments made with respect to the issues as to the execution and delivery of the deed by Mrs. Schueler will not be summarized.

Reference has been made to three transactions on November 10, 1936. Of these, the transaction involving the Berteau avenue property in Chicago has a direct bearing upon the question of the fairness of the conveyance of the property in McHenry county. In explanation of the statement with respect to Mrs. Schueler being the owner of the property more than four months after title had been conveyed to him and the deed recorded, defendant testified that he intended to give the deed back to her if he did not acquire the mortgage owned by Porter; that, although he recorded the deed, "I could easily give her the thing back; that was just pending my negotiations for the stuff." He declared he was not the person mentioned in the letter who bought the mortgage from Porter and about to foreclose, stating that negotiations incident to the property had been in progress for almost a year, and that the person referred to was an attorney. Defendant added that he expected the attorney to give him $50 to $75 "for the deed which I had," and "If he got that much for the deed we would have to straighten out between ourselves on the hundred dollars I paid her." Further explaining the statement in the letter of March, 1937, that Mrs. Schueler was still the owner of the property, defendant said, "Because my purpose for taking the deed was, if I could buy the mortgage, get the taxes settled, then she could keep the

hundred dollars for the deed and if I wasn't able to do that we would have to dicker then for it, if we could get the fellows in line and then she would have to settle with me. It was a lucky thing that they were able to make the deal."

From defendant's testimony it appears that the first time Mrs. Schueler talked with him concerning the matter of giving him the property on the Fox river was during the summer of 1935 at her home. No one else was present. He testified that the second conversation relative to this property took place in the spring of 1936 when they were alone. Referring to the first discussion, in 1935, defendant testified that Mrs. Schueler said she was disgusted with the fact all of her children were fighting each other, expressed her inability to bring them to an agreement, and he stated that, "I was protecting her interests in the bonds, etc., and she was going to give me something some day and she thought, eventually, some time or other, she would give me the property out there at McHenry." The second discussion occurred at defendant's office in May, 1936, and, according to him, as she departed, Mrs. Schueler said, "don't forget that property in McHenry," adding, "we will have to deed that over some time." There is no other testimony with respect to preliminary discussion concerning disposition of the property on the Fox river. Defendant testified that, on November 10, 1936, he explained to her the circumstances incident to executing the deed to the property on Berteau avenue in Chicago; that she said, "Well, draw it up—the Berteau deed," and that, after this deed had been executed, added that he, defendant, might as well prepare the other deed,—"there is no better time than now." Defendant testified that Mrs. Schueler then declared, "I am going to give you this deed, with the understanding I am to live there as long as I live, and I'll maintain it and everything else and when I die you will be entitled to possession of it." Defendant testified that, subsequent to the conveyance of the property to him, on numer-

ous occasions when he visited Mrs. Schueler, she said, "Have you ever recorded the deed to the McHenry property?" and, also, "Be sure about it and put it in a safe place so you won't lose any title."

The value of the Fox river property in 1936 was between $6500 and $7500. In 1945, its market value was approximately $8500. The inventory of Mrs. Schueler's estate discloses that on January 4, 1944, she was worth about $11,000, excluding the property in question.

Whether the will drafted by defendant was actually executed on November 10, 1936, or the next day, is of little moment as, in any event, defendant discussed the subject with Mrs. Schueler on November 10. Referring to this will, defendant testified that Mrs. Schueler voluntarily said she would give him the farm home in McHenry county provided he took charge of the rest of her assets for the benefit of her four sons.

Roy A. Kent testified that in October, 1942, when Mrs. Schueler ordered a fire-insurance policy she mentioned that she might sell the property and would let him know if she decided so to do. He asked her about the title and, in particular, if it was in her name, her husband's name, or in an estate. She appeared uncertain, and he suggested she order a tract search from a title company. This was done. A letter dated November 18, 1942, from the Kent Company to Mrs. Schueler enclosed the tract index search disclosing title in defendant. Her sons testified that she became greatly distressed and excited upon receiving the information concerning the record status of the title. Arthur Schueler testified that she repaired to her room where he heard her crying and moaning; that she told him she was in trouble, but could not tell him at the time; that, the following Sunday, he took his mother to Walter Schueler's home and, in the presence of her three sons, Walter, Albert and himself, advised them of the title search. According to Arthur and Albert Schueler, their

mother stated that she neither signed nor gave a deed to defendant. Albert Schueler testified that she said, "Do you boys think I am crazy, that I am going to convey this property to Mr. Blomstrand? I spent $350 on a seawall; I have got myself to take care of and you boys have been looking after me and after the property for 30 years and should I convey that property to Mr. Blomstrand? I am not crazy." The witness stated that the quoted words were the exact words used. He also testified that his mother observed, "I have signed many papers; I have never looked at them; I have confidence in Mr. Blomstrand, I never questioned him; Mr. Blomstrand said —'Here, sign the papers' and I signed them; I never questioned them at all; I had confidence in the man; do you think I would wilfully turn that property over to that man when I had three boys? No."

Additional facts and circumstances merit attention. Testimony on the part of defendant is to the effect that Mrs. Schueler and her sons were not on friendly terms. On the other hand, the testimony of plaintiffs is to the effect that they visited her regularly at her home in McHenry; that one or more of them spent many, if not all, weekends with her and that, when she was in Chicago, she resided at the homes of her sons, first, with Theodore and, later, with Arthur. It also appears that Theodore Schueler, his wife and family, long occupied the property on Berteau avenue in Chicago, and that, for a considerable period, Theodore did not pay any rent to his mother for the adequate reason he was unable to do so, being at times on public relief. The advances made to this son are given in Mrs. Schueler's last will as reasons for excluding him from sharing in her estate.

That a fiduciary relationship between defendant and Mrs. Schueler obtained is conceded. The controlling question presented for decision is whether, as a fiduciary, defendant has satisfied the burden cast upon one occupying

this capacity of proving that the challenged transaction was fair and that he did not use his position as a fiduciary to take undue advantage of Mrs. Schueler. Where, by reason of business association, as here, the grantee is in a particularly intimate position with regard to the grantor, and the latter reposes a high degree of trust and confidence in the former, a confidential relationship exists. (3 Bogert on Trusts and Trustees, sec. 496.) A fiduciary or confidential relation admittedly existing, the burden rests upon the grantee or beneficiary of an instrument executed during the existence of such relationship to show the fairness of the transaction, that it was equitable and just, and that it did not proceed from undue influence. (*Suchy* v. *Hajicek,* 364 Ill. 502; *Addis* v. *Grange,* 358 Ill. 127; *Dowie* v. *Driscoll,* 203 Ill. 480; *Thomas* v. *Whitney,* 186 Ill. 225.) In short, where it appears that relations of trust and confidence obtain between parties to transactions, the dominant party, who has profited thereby, must rebut the presumption of fraud by clear and convincing proof showing the exercise of good faith on his part and that he has not betrayed the confidence reposed in him. (*Jackson* v. *Pillsbury,* 380 Ill. 554.) Conversely, it is equally well established, as defendant maintains, that the mere existence of a fiduciary relation does not invalidate every transaction between the parties. (*Matanic* v. *Krajach,* 392 Ill. 547; *Allen* v. *McGill,* 311 Ill. 170; *Pillsbury* v. *Bruns,* 301 Ill. 578; *Ziegler* v. *Illinois Trust and Savings Bank,* 245 Ill. 180.) Indeed, such contracts and transactions generally, if open, fair, and honest when deliberately made, are as valid as contracts between other parties. Important factors in determining whether a particular transaction is fair include a showing by the fiduciary (1) that he has made a free and frank disclosure of all the relevant information which he had; (2) that the consideration was adequate, and (3) that the principal had competent and independent advice before completing the transaction. 3 Bogert on

Trusts and Trustees, sec. 493; *Masterson* v. *Wall*, 365 Ill. 102; *Thomas* v. *Whitney*, 186 Ill. 225.

In the light of these familiar principles, can it be said that defendant has satisfied the burden resting upon him as a fiduciary in establishing that the transaction assailed was fair? Except for the corroborative testimony of former employees in his real-estate office who testified solely with respect to the execution of the deeds and will on November 10 and 11, 1936, we have only the testimony of defendant himself. Although plaintiffs do not seek to set aside their mother's deed to defendant to the Berteau avenue property, this transaction, so closely connected with the Fox river property transaction, must be considered in determining defendant's good faith. He purchased this property by paying Mrs. Schueler one hundred dollars for her equity, and bought the evidence of the mortgage indebtedness from another at a substantial discount, without advising Mrs. Schueler that he was negotiating for, or had already, purchased the mortgage notes. His letter to her, written more than four months after November 10, 1936, refers to her ownership of this property and his explanation, previously described, is lame in the extreme. Defendant's counsel say that his letter of March 23, 1937, "clearly apprised her [Mrs. Schueler] of the fact that he had a deed, if she did not already know it." On the day when the Berteau avenue property became forever lost to Mrs. Schueler, defendant's testimony is that she voluntarily advanced the suggestion of deeding her property at McHenry to him as an absolute gift. The only other testimony in this regard is his own to the effect that, on at least two previous occasions, she had manifested a desire to make a gift of this property to him. She is not here to contradict him. When, however, a title search in November, 1942, disclosed title of record was in defendant, she expressed her amazement in no uncertain terms, deeded the same property to three of her sons, executed a new will devising

the property to them, and brought this action by filing her complaint against defendant seeking the removal of the deed as a cloud upon her title. She was seventy-seven years of age in November, 1936, and eighty-three or eighty-four years old when she filed her complaint. Under the circumstances, she acted with reasonable dispatch and challenged the transaction in the only practical way open to her by recourse to this litigation. On the other hand, evidence is wanting that defendant made an adequate disclosure of all the pertinent facts known to him. And, assuredly, Mrs. Schueler did not have independent advice before completing the transaction.

The evidence discloses that when the deed in question was executed at defendant's office, he had before him the deed from Mrs. Schueler's granddaughter to herself, reconveying the property. Defendant denied that this deed was folded in another deed, as alleged in plaintiffs' pleadings, and, for obvious reasons, there is no testimony to the contrary. Defendant is mistaken in his view that his testimony must be accepted as clear and convincing proof merely because it was not contradicted. His version that the deed was a voluntary gift is not the only theory readily suggesting itself. Actual and intentional fraud need not be established in order to set aside a deed where a fiduciary relation exists. (*Feeney* v. *Runyan,* 316 Ill. 246; *Beach* v. *Wilton,* 244 Ill. 413.) The record discloses that Mrs. Schueler signed many papers at defendant's request in connection with her defaulted bonds, mortgage notes and other matters, and it is equally as likely that she signed the deed to the property at McHenry upon being requested so to do because of her implicit faith and confidence in defendant, without knowing the contents of the document. Again, the quoted statements attributed to Mrs. Schueler by defendant are incredible. They are not the statements of an elderly woman dependent entirely upon outside advice in handling her business matters. Moreover, his own acts,

or more accurately inaction, require scrutiny. If he deemed himself the owner of the property from November, 1936, on, it is inconceivable that he would not make inquiry with respect to the payment of taxes, the maintenance of the property and, above all, the payment of insurance premiums. There is not a scintilla of evidence showing that, at any time, he made such inquiry. It must be remembered that Mrs. Schueler had previously conveyed the property to her granddaughter for the sole purpose of placing title in the latter to avoid judgments and claims against herself. In view of the fact that, for six years, defendant made no affirmative assertions of ownership other than recording the deed, his inaction, if not indifference, to the maintenance of the property itself during these years, warrants the conclusion that if Mrs. Schueler knowingly executed the deed, she did so for the purpose described, and not to vest title in fee in defendant, reserving possession to herself for life, as he asserts.

Referring to the will dated November 11, 1936, defendant's counsel say it shows "that when Blomstrand drew a Will for Alvina Schueler he was fair in his dealings with all the children and left the property to all four of them. * * * We insist that because he named the four children as beneficiaries, rather than limiting it to the three plaintiffs, it was evidence of upright and decent dealing on his part." No reason is assigned for defendant arrogating to himself the determination of the beneficiaries of Alvina Schueler's will.

The record proclaims the existence and exercise of undue influence. It has been said, (*Myatt* v. *Myatt,* 149 N. C. 137,) "To constitute undue influence it is not necessarily required that there should exist moral turpitude or even an improper motive; but if a person, from the best of motives, having obtained a dominant influence over the mind of a grantor, thereby induces him to execute a deed or other instrument materially affecting his rights, which

he would not have made otherwise, exercising the influence obtained to such an extent that the mind and will of the grantor is effaced or supplanted in the transaction," the instrument will be deemed fraudulent. Again, "Certain transactions are presumed, on grounds of public policy, to be the result of undue influence. Such transactions are generally those occurring between persons in some relation of confidence, one toward another. The presence of such relationship creates a presumption of influence, which can generally be rebutted by proof that the parties dealt as strangers, at arm's length; that no unfairness was used, and that facts in the knowledge of the one in the position of influence, affecting the matter, were communicated to the other." (*Thomas* v. *Whitney,* 186 Ill. 225.) In short, the undue influence justifying the setting aside of a deed must be of such character as to destroy the free agency of the grantor and render his act the product of the will of another instead of his own. The character of the transaction, the mental condition of the person whose act is questioned, and the relationship of the parties concerned to each other are all elements which may be considered in applying the rule. (*McCord* v. *Roberts,* 334 Ill. 233; *Beach* v. *Wilton,* 244 Ill. 413.) Nor is direct evidence essential to prove undue influence. Where the facts and attendant circumstances lead to the conclusion that such influence has been exercised in the execution of a deed, and such proof has not been met by satisfactory evidence, the deed will be set aside. *Warren* v. *Pfeil,* 346 Ill. 344; *Elam* v. *Elam,* 294 Ill. 96.

The property involved in this litigation is a substantial portion of all the propery owned by Mrs. Schueler. In 1936, the value of real-estate bonds being considerably less than in 1944 when she died, the Fox river property represented an even larger proportion of her estate than in January, 1944. The contention that she would, uninfluenced, make a gift of this property to defendant to whom

she was not indebted, and who was compensated for all services rendered her in connection with defaulted bonds in his capacity as chairman of bondholders' committees and through his real-estate company as depositary for such bonds, thereby disinheriting her sons, is repellent to the law. Ignoring all testimony except the testimony of defendant himself, we are of the opinion that he has wholly failed to prove the transaction fair, that he abused the confidential relationship which obtained between him as a fiduciary and Mrs. Schueler, and that undue influence was exercised to accomplish the execution and delivery of the deed to him.

Our conclusion is amply supported by the authorities. *Burroughs* v. *Mefford,* 387 Ill. 461; *Fisher* v. *Burgiel,* 382 Ill. 42; *Steinmetz* v. *Kern,* 375 Ill. 616; *Commercial Merchants Nat. Bank and Trust Co.* v. *Kloth,* 360 Ill. 294; *Addis* v. *Grange,* 358 Ill. 127; *Mors* v. *Peterson,* 261 Ill. 532; *Dowie* v. *Driscoll,* 203 Ill. 480; *Thomas* v. *Whitney,* 186 Ill. 225.

Defendant points out that, in many of the cases cited and relied upon by plaintiffs, the transactions took the form of business dealings between the fiduciary and the subservient party, and that a nominal consideration is often set forth. His argument, in substance, is that if he had paid a relatively nominal sum of money to Mrs. Schuler, a stronger case of abuse of fiduciary relationship would have been made than in the present case where there was no consideration for the conveyance. The mere statement of the proposition carries its own condemnation. In short, it cannot be said, as defendant argues, that Mrs. Schueler entered into the transaction with full knowledge of its nature and effect and because of her deliberate, voluntary and intelligent desire.

*Burt* v. *Quisenberry,* 132 Ill. 385, upon which defendant places reliance, says, "But influence secured through affection is not wrongful, and therefore, although a deed be made to a child at his solicitation, and because of par-

tiality induced by affection for him, it will not be undue influence." In the case at bar, the evidence does not support a conclusion of influence obtained through affection for defendant. The argument that "The property was given to him as a reward which the grantor, at the time, considered proper" finds a basis only in the highly incredible testimony of defendant. The testimony of a witness may itself contain its own impeachment and, if so, neither court nor jury is required to give it credence, and it may be disregarded. *People* v. *Bentley,* 357 Ill. 82; *Mannen* v. *Norris,* 338 Ill. 322; *Kennard* v. *Curran,* 239 Ill. 122; *Podolski* v. *Stone,* 186 Ill. 540.

The decree of the circuit court of McHenry county is reversed and the cause is remanded, with directions to dismiss defendant's counterclaim and to enter a decree conformably to the prayer of plaintiffs' amended complaint.

*Reversed and remanded, with directions.*