Kathleen A. Burns, Plaintiff-Appellee, v. Charles R. Stouffer, Elmer D. Rademaker, and Alice Roodhouse, Defendants.

On Appeal of Charles R. Stouffer, Appellant.

Gen. No. 10,477.

Opinion filed July 12, 1951. Released for publication August 1, 1951.

Caplow & Kelley and Frank P. North, all of Chicago, for appellant; C. A. Caplow, of Chicago, of counsel.

BURRELL & BURRELL, of Freeport, for appellee; DAVID M. BURRELL, of Freeport, of counsel.

MR. JUSTICE BRISTOW delivered the opinion of the court.

Defendant, Charles R. Stouffer, is appealing from a judgment of the circuit court of Stephenson county entered on a jury verdict, in favor of plaintiff, in the amount of $12,000 for damages sustained in a highway collision between defendant's automobile and that in which plaintiff, Kathleen A. Burns, was riding.

The salient issues presented herein are whether the verdict of the jury was contrary to the weight of the evidence, whether certain instructions given on behalf of plaintiff constituted reversible error, and whether the court improperly refused to reduce the judgment by crediting the amount paid to plaintiff by defendant Rademaker, who received, in return, plaintiff's covenant not to sue and was dismissed from the case during the pendency of the trial.

From the controverted evidence it appears that on November 10, 1947, between 2:00 and 2:30 P.M., plaintiff was riding in an automobile driven by her husband in a westerly direction over a level stretch of highway covered with slush and ice on route #20, between Freeport and Rockford, Illinois, at an alleged speed of 25–35 miles an hour.

A truck, owned and operated by defendant Rademaker, was the first of three vehicles proceeding toward plaintiff from the opposite direction. The truck had broken down some time prior to the ensuing collision, and was either moving slowly, as defendant Rademaker claims, or completely stalled, according to defendant Stouffer. Behind the truck was the car driven by defendant Stouffer, which was followed by the car of defendant Roodhouse.

The sequence of events as established by the testimony of plaintiff, her husband, and his sister who was

107

riding in the back seat of their car, and corroborated, in a measure, by the statements of defendant Rademaker and defendant Roodhouse, was that, as defendant Stouffer approached the slowly moving or stalled truck directly in front of him, he turned out and endeavored to pass the truck with the result that his car collided head on into the car in which plaintiff was riding.

Defendant Roodhouse testified that when she drove up to the scene, the front part of the Stouffer car was over the center line onto the westbound traffic lane of the highway, and had already collided into plaintiff's car; and that in endeavoring to stop abruptly, she skidded and bumped defendant Stouffer's car lightly. Defendant Rademaker also stated that the Stouffer car was in motion, almost along side of his truck and over the center line, when it collided into the car in which plaintiff was riding.

Defendant Stouffer, however, submits a different interpretation. His testimony, corroborated by that of his wife, asserts that when he stopped just behind the stalled truck, his car was hit from the rear by the Roodhouse car and pushed partly into the westbound traffic where plaintiff's car, coming from the west, skidded into his car causing some light damage to the front bumper, headlights and grill of the Burn's car.

Although plaintiff maintains that she had never sustained a back injury prior to this collision, defendant Rademaker stated that he heard plaintiff's husband say, "Oh, my God, now she hurt her back again." With reference to the injury sustained by plaintiff, there is extensive medical testimony. Apparently, plaintiff sustained an unusual type of fracture of the 5th lumbar vertebra, which was flattened so that the fragments were scattered in all directions, and encroached on a canal traversed by certain nerves. She was placed in a cast, and some time thereafter developed virus pneu-

monia. After treatment, she was transported to Minneapolis, where she received further treatment for both the pneumonia and the back injury. The medical bills totaled $1,592.20. The bone fragments are still in her spinal cord; there is still some atrophy in her spine, and plaintiff has nerve symptoms of which she may never be relieved.

Although this proceeding was originally instituted against all three defendants, defendant Alice Roodhouse was dismissed on February 17, 1950, and defendant Elmer D. Rademaker was dismissed on June 16, 1950, the second day of the trial, after he paid plaintiff $1,000 in return for plaintiff's covenant not to sue. The jury returned a verdict in favor of plaintiff for $12,000 on which the court entered judgment and, thereafter, denied defendant's motion to reduce the judgment by crediting the $1,000 paid to plaintiff by defendant Rademaker. From this judgment and the denial of his motions, defendant Stouffer brings this appeal.

 The abstract proposition of law that it is the duty of the court to set aside verdicts which are clearly against the manifest weight of the evidence is not debatable. In *Schneiderman v. Interstate Transit Lines,* 331 Ill. App. 143, the court, in reviewing the cases reiterating this rule, analyzed the determinative factors as to whether the verdict of the jury is merely a "triumph of sympathy over reason." Thus, where the jury rejects testimony that is uncontroverted, either by positive testimony, or by circumstances, and the witness is not impeached, it is clear that the jurors have acted arbitrarily. (*Larson v. Glos,* 235 Ill. 584.) For, in the absence of conflicting evidence, the jury should only reject testimony that is inherently improbable, or contrary to the laws of nature, or containing its own impeachment. (*Schueler v. Blomstrand,* 394 Ill. 600.)

109

In the instant case, the testimony is conflicting and evenly balanced. Admittedly, the estimates of plaintiff's husband as to the distances and relative speeds of the cars does not jibe mathematically with his account of the collision. However, the sequence of events according to plaintiff's theory is both physically plausible and corroborated by the testimony of unimpeached witnesses.

It is established by the evidence that the collision occurred along side of the truck, and that defendant's car was partially over the center line onto the westbound traffic lane. Defendant Stouffer's claim that he was pushed into that lane when the Roodhouse car skidded into the back end of his car is contradicted by defendant Roodhouse's testimony that her car did not contact the Stouffer car until after the latter had already nosed out from behind the truck into the westbound lane, and had collided into plaintiff's car.

██ With reference to the plausibility of these conflicting claims, it is pointed out that if defendant Stouffer had stopped his car directly behind the truck, as he contends, and was then hit from behind by the Roodhouse car, it is likely that the Stouffer car would have bumped into the back end of the truck. There is, however, no such evidence. Moreover, the wheels of defendant's car would have had to be completely turned to the left, and the force from behind would have had to be substantial for his car to be pushed along side the truck. The record does not contain any such evidence. It is apparent, therefore, that this is not a case where the jury rejected uncontradicted testimony, or accepted improbable evidence. Upon a re-examination of the facts, the verdict cannot be deemed manifestly against the weight of the evidence, and should not be set aside.

██ Defendant contends further that the court erred in giving certain instructions to the jury. Al-

110

though a party is not entitled to have an alleged erroneous instruction reviewed unless it is set out in the brief and not merely referred to by letter or number, courts have, on occasions, examined instructions referred to only by number. (*Millikin Nat. Bank of Decatur v. Shellabarger Grain Products Co.,* 326 Ill. App. 72.) In the instant case, the instructions complained of were set out in the abstract but not in the brief. Nevertheless, they warrant the attention of the court.

██ ██ Plaintiff's instruction no. 2, in defining the issues, included plaintiff's entire verbose complaint containing charges which were unsubstantiated by the evidence, and was, therefore, improper. (*Reivitz v. Chicago Rapid Transit Co.,* 327 Ill. 207; *Lotspiech v. Continental Ill. Nat. Bank & Trust Co.,* 316 Ill. App. 482.) Courts have stated that the better practice is to define the issues without referring the pleadings to the jury. (*Lotspiech v. Continental Ill. Nat. Bank & Trust Co., supra.*)

In the *Reivitz* case, *supra,* the court stated at p. 212:

"The mere fact that allegations of the declaration are copied into an instruction does not render it objectionable, (citation) but the incorporation into an instruction of the declaration with all its charges, some of which, after the proof is in, may be disregarded, tends to confuse the jury. This is especially true when there are a number of counts, and thus a number of verbose instructions couched in the language of the pleader."

Despite this condemnation, the court did not reverse the judgment on account of this improper instruction, but stated that whatever error there was in the verbose recital of the charges in the declaration was cured by other instructions, given at defendant's request, as to what plaintiff must prove to warrant a recovery.

111

In the case at bar, there was also such a "saving" instruction, and although it did not directly follow the improper instruction, it appears that upon consideration of the instructions as a series, the jury were apprised of the law, and hence, this improper instruction may not be deemed a ground for reversal.

██ Plaintiff's instruction nos. 19 and 20 were also improper, in failing to state that the amount of recovery must be based not only upon the evidence of damages, but upon damages for which the law allows recovery. Defendant cites *Garvey v. Chicago Railways Co.*, 339 Ill. 276, and *Crane v. Railway Exp. Agency, Inc.*, 293 Ill. App. 328, in support of the contention that these instructions constituted reversible error. However, in the *Crane* case, *supra,* the court specifically held that although such an instruction was improper, it did not constitute reversible error. And in the *Garvey* case, *supra,* the court noted that the instruction contained additional objectionable features, but that, despite those circumstances, it would not, in itself, call for a reversal of the case.

██ This court cannot agree with defendant that it was error to refuse to give defendant's instruction no. 3 involving the statutory provision respecting vehicles stalled or parked on the highway. Even if defendant Rademaker who had been dismissed from the case had violated this statute, it would not excuse defendant's alleged negligence in turning out to pass the truck on a slippery, slushy highway and crossing into the westbound traffic lane at a time when the car in which plaintiff was riding was approaching from the opposite direction. Therefore, this instruction was neither relevant or determinative.

██ It is our judgment that the refusal of the trial court to credit the amount paid plaintiff by defendant Rademaker for a covenant not to sue, did constitute reversible error.

Plaintiff contends that defendant failed to properly introduce this covenant in evidence in accordance with the rules of practice, and therefore, the court could not take cognizance of it. From a careful examination of the record, it is clear that defendant Rademaker was dismissed during the course of the trial after having paid plaintiff $1,000 in return for a covenant not to sue. Defendant's counsel then moved for a continuance to afford him time to plead the payment, but, inasmuch as that pleading was waived by plaintiff's counsel and the court, the motion for continuance was denied. In the course of that proceeding, plaintiff's counsel admitted the execution of the instrument, and stated that the record could show that defendant's counsel was being furnished with a duplicate of the original of this covenant. Under these circumstances, there was a sufficient presentation of the issue of the covenant into the record to warrant its consideration by the court.

In *Puck v. City of Chicago,* 281 Ill. App. 6, the court stated at p. 11, " . . . and since it was stipulated on the trial that plaintiff had received $175.00 for which she executed a covenant not to sue the Warner Brothers Theater, this amount should be credited on any verdict that might be obtained."

Similarly, in *Aldridge v. Morris,* 337 Ill. App. 369, where the court reviewed and rationalized the cases involving the effect of payments by a co-defendant in return for a covenant not to sue, on the amount recoverable by the plaintiff, it was held that such payment should properly be credited. The court stated at p. 380:

" . . . where plaintiff receives a payment for a covenant not to sue from one against whom tort liability could lie, such payment, made before or after judgment, may be deducted from the damages recoverable from persons whose tort liability arises out of the same circumstances. . . . "

113

■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■

On the basis of the foregoing analysis, the circuit court's denial of defendant's motion to have the $1,000 paid by defendant Rademaker credited on the amount recoverable by plaintiff constituted error, and the judgment of the court, while affirmed in all other respects, should properly be reversed on this issue, and remanded with directions for modifying the amount of the judgment in accordance with the views expressed herein.

*Judgment reversed in part and remanded with directions.*